The Terre Haute and Indianapolis Railroad Company v. Brunker.

No. 14,219.

## THE TERRE HAUTE AND INDIANAPOLIS RAILROAD COMPANY v. BRUNKER.

VERDICT.—*Special.*—*Conclusions of Law.*—*When Verdict not Vitiated.*—A special verdict is not vitiated by reason of stating conclusions of law, if, after eliminating all such conclusions, the necessary facts are fully set forth.

RAILROAD.—*Personal Injuries.*—*Negligence.*—*Crossing.*—*Failure to Give Signal.*—A railroad company will not be exonerated from liability in an action for personal injuries alleged to have been sustained by a traveller on the highway when its servants in charge of a train failed to give the proper signals for a crossing which the train was approaching, but did give a signal for a second crossing before reaching the first crossing, which signal was given at a point much nearer to the latter crossing than the signal required for that crossing, and the traveller who was upon the highway stopped and looked and listened and approached slowly, and continued to look and listen, seeing or hearing nothing, until his horses were in such close proximity to the train that they became frightened at the train, or at the sounding of the whistle for the second crossing, and he was injured in consequence thereof. As between the railroad company and the approaching traveller it induced him to approach to within an unsafe proximity to the crossing by the failure to give the lawful signals, and the train was not lawfully there as against the traveller without having first given the signal required by law before coming upon the crossing.

SAME.—*Special Verdict.*—*When not Defective.*—A special verdict in such a case is not defective which fails to find that the horses were docile, and that the traveller could have heard the signals if sounded, and would have stopped and could have controlled his horses at that distance.

INSTRUCTION TO JURY.—*Action for Personal Injuries.*—*Instruction as to Peril of Life.*—*Propriety of.*—An instruction in an action for damages for personal injuries alleged to have been sustained by the plaintiff, is not erroneous which states, among other things, that the jury should " take into account the peril, if any there was, to plaintiff's life," and which concludes with the statement that only such damages shall be assessed " as will reasonably and justly compensate the plaintiff for his injuries." It was proper for the jury to consider the hazard and jeopardy in which the plaintiff was placed; in other words, the peril to his life, and allow such damages as resulted therefrom in determining the damages which he sustained, and his suffering in body and mind by reason of the injury.

PRACTICE.—*Action for Personal Injuries.*—*Medical Examination of Party.*—*Motion for.*—*When Properly Overruled.*—It was not error in an action for

The Terre Haute and Indianapolis Railroad Company *v.* Brunker.

personal injuries for the court upon the second trial of the cause to re-
fuse to require the plaintiff to submit to an examination by medical
experts, the motion to that effect not having been made by the defend-
ant until after the plaintiff had put in his evidence and rested his case,
and the motion not being supported by any affidavit showing any neces-
sity for it, or any belief as to what such examination would develop.

From the Vigo Circuit Court.

*B. Harrison, W. H. H. Miller, J. B. Elam, F. Winter* and
*J. G. Williams,* for appellant.

*C. F. McNutt,* — *Davis* and — *Davis,* for appellee.

OLDS, C. J.—This was an action by the appellee against
appellant for damages for injuries received to his person, and
properly alleged to have been caused by the negligence of
the appellant.

The plaintiff, on the 8th day of May, 1885, about six
o'clock in the evening, was driving a two-horse team and
wagon, travelling east on the national road in the county of
Putnam, about one mile and a half west of Reelsville.   At
that point the National road crosses the appellant's railroad.
Appellee's horses became frightened when the train was ap-
proaching and passing the crossing, and appellee was injured.

Issues were joined on the complaint; there was a trial
had, and a special verdict returned by the jury, and judgment
on the verdict for the appellee.

The errors assigned are :

*First.* The court erred in overruling appellant's motion
for judgment in its favor on the verdict.

*Second.* The court erred in sustaining appellee's motion
for and in rendering judgment in favor of appellee on the
verdict.

*Third.* The court erred in overruling appellant's motion
for a new trial.

The jury by their special verdict found the following facts
which are material to be considered in passing upon the
questions presented :

That on the 8th day of May, 1885, the defendant was op-

erating the railroad, and the plaintiff, at about six o'clock P. M. on said day, was travelling eastward along the National road, a public highway; that he was driving two horses attached to a two-horse vehicle loaded with medicine; that he was upon a seat in the front part of said vehicle; that said highway at a point about one and one-half miles west of Reelsville, in Putnam county, crosses the Terre Haute and Indianapolis railroad; that plaintiff approached said crossing driving at ordinary speed in a walk; that when he came within about 100 yards of said crossing he stopped his team and both looked and listened for approaching trains, but saw none, and no train was then at a point visible from said point of observation, nor did plaintiff hear any sound or signal of an approaching train; that thereupon he drove his team walking toward the crossing; that the grade of said railroad at said crossing is and was about ten feet above the common level of the ground on which the road lay until within a little over 100 feet of the crossing, where it began gradually to rise upon a grade, which at the crossing is of the same height as the railroad; that when plaintiff had reached and entered upon the grade, and not till then, he saw a passenger train approaching from the east at a rapid rate of speed, to wit, at the rate of from 40 to 50 miles per hour; that immediately upon seeing the train, which was not more than from four to six hundred feet from the crossing, plaintiff leaped to the ground and ran to his horses' heads to hold them; that at about the time he discovered the approaching train, and as he was going to his horses' heads, and when the train was about three hundred and fifty or four hundred feet from said crossing, the whistle to the engine attached to the approaching train began to sound, and continued to so sound until at or about the crossing; that the horses attached to the plaintiff's wagon became so greatly frightened by the train that in attempting to break away from plaintiff they turned southward, dashed down a precipitous bank caused by the construction of said

grade, and at a point about three feet in height, knocked the plaintiff down, trampling upon him and drawing the wagon, which with its load weighed about thirteen hundred pounds, upon and across the arms and body of plaintiff, severely injuring him, without any fault on his part, and while he was in the exercise of reasonable prudence and diligence to prevent injury to his person and property; that as the train approached said crossing, and when not more than one hundred nor less than eighty rods from said crossing, the whistle of the engine was not sounded three times distinctly, nor was it between, at or within said points sounded at all, nor was the bell attached to said engine, if any was attached, rung as the train approached said crossing; that the defendant's agents and servants in charge of said train negligently failed to either sound the whistle or ring the bell of said engine so attached to said train; that said negligent failure to sound said whistle and ring said bell was the cause of the injury to plaintiff without his fault; that plaintiff was at the time of the injury about 53 years of age; that plaintiff did not hear the sound of the whistle nor the noise of the approaching train, though looking and listening for the same, until it had reached a point from four to five hundred feet from the crossing which he was approaching; that plaintiff had no knowledge of the time of the passage of the trains at that time at that point; that after leaving said point where the plaintiff stopped to look and listen there is no point on said railroad at which a train approaching from the east is visible to one approaching the crossing along the highway until such train passes a cluster or clump of timber near defendant's railroad, about six hundred feet east of said crossing; that prior to the injuries received as aforesaid, the plaintiff was a man of good health, and able to pursue his business, which was that of travelling with a wagon and team and selling and delivering medicines of which he was the proprietor, and at which pursuit he was able to earn a livelihood for himself

and family; that by reason of his being knocked down and trampled upon, and run over by said wagon, his life was imperiled and his body and his limbs were severely and painfully injured and bruised, and he was severely injured in his lungs, which injury is permanent, and has caused, and is liable to cause, plaintiff great suffering at times, and on taking slight cold or making slight exertion, prostrating him and causing very great pain and suffering and peril to his. life; that by reason of said injuries he has been compelled to abandon and give up his business of travelling, to sell and deliver his medicine, whereby he has suffered and must suffer serious pecuniary loss; that defendant is a railroad corporation, owning and operating a railroad extending from Indianapolis, in the State of Indiana, through Reelsville, Putnam county, Indiana, to the city of Terre Haute, in said State, and said railroad between Reelsville and a point two miles west thereof crosses a highway known as the National road four times, and also crosses within said distance another highway running from north to south on a section line, the fourth crossing of the National road being about sixty-one rods east of said section line highway, and about one hundred and sixty rods west of the third crossing of said National road; that plaintiff was approaching the fourth crossing, and when about 300 feet west of said crossing he stopped, and while sitting in his wagon looked and listened, his eyes being six feet nine inches above the ground, and he could have seen a train approaching from the east at a point on defendant's railroad 1490 feet east of the fourth crossing of said National road; no train was in sight, and he drove on to a point about 100 feet west of said fourth crossing, and at this last named point a west bound train on defendant's railroad came in view running from 35 to 50 miles per hour.

It is then again stated in the verdict that the plaintiff got down and went to his horses' heads; that the whistle was sounded at the point, as before stated, and the horses became frightened and became unmanageable, and the wagon ran

over him, and that the whistle was not sounded at more than one hundred nor less than eighty rods of the fourth crossing, but was sounded within that distance before reaching the third crossing; then follows another statement as to plaintiff's injury, his health and business, both before and after his injury, giving it more in detail than in the former part of the verdict; and that the plaintiff's time before the injury was worth ten dollars per day, and concluding with the finding that if upon the facts the law is with the plaintiff the jury find for the plaintiff and assess his damages at $4,400, and if the law be with the defendant the jury find for the defendant.

It is insisted that the verdict is insufficient to entitle the appellee to a judgment, for the reason, as stated by counsel, that it is a special verdict, and, being such, its function is to find facts and facts only, and that it is not good unless it finds all such facts as are necessary to enable the court to say, as an inference or conclusion, that the defendant was guilty of negligence causing the injury, and that the plaintiff was not guilty of negligence contributory thereto.

It is insisted that certain parts of the verdict, viz.: "That thereupon exercising reasonable prudence and caution, he drove his team, walking, toward the crossing;" again, referring to the plaintiff jumping from his wagon and going to his horses' heads, it is stated : "Which act we find to be a reasonable and prudent one under the circumstances;" again, after stating the manner of the injury, it is stated that he was "without any fault on his part and while he was in the exercise of reasonable prudence and diligence to prevent injury to his person and property," and again it is stated : "And we find that the defendant's agents and servants in charge of said train negligently failed to either sound the whistle or ring the bell of said engine so attached to said train ; that said negligent failure to sound said whistle and ring said bell was the cause of the injury to the plaintiff without his fault," are mere conclusions and not findings of

facts, and must be disregarded, or in other words the verdict must be considered as if such statements were struck out of it.

We can not agree with the contention of counsel that all these statements in the verdict are mere conclusions. If, in the first, the words "exercising reasonable prudence and caution" may be said to be a statement of a conclusion which has no place in the verdict, the words "he drove his team, walking, toward the crossing," are clearly the statement and finding of a fact, and must remain in and constitute a part of the verdict, and be considered with the other facts found. The words "without any fault on his part," we think, may be properly stated in the verdict. It is necessary to allege in the complaint that the plaintiff is without fault; and no harm can result from the jury stating in their special verdict that the injury occurred without plaintiff's fault, and if it be a mere conclusion drawn from the facts it can make no difference in this case, since the facts·upon which such conclusion is based are also stated, and from which the court was authorized to draw the same conclusion, viz., that the plaintiff was without fault, and we think the facts found fully justified the court in drawing such conclusion, and rendering judgment for appellee.

As regards the statement that the agents and servants in charge of said train negligently failed to either sound the whistle or ring the bell of the engine so attached to said train, all that can possibly be said to be improperly included in the verdict is the word "negligently," and if this be struck out it leaves the verdict stating the fact that they did not sound the whistle, from which the court might and would draw the conclusion that it was negligence if omitted to be sounded, when the law required it to be done.

This we deem to be all that it is necessary to say in regard to the conclusions, or what may be claimed to be conclusions, stated in the verdict, for, after eliminating from the verdict all that could possibly be regarded as conclusions,

and having no place in the verdict, the verdict then states the facts fully.

It finds the appellee was travelling upon the highway. When approaching the crossing, at a proper distance, and at the only point he could see the approaching train until he came in close proximity to the crossing, he then looked and listened ; that when he approached this point his team was walking. He then proceeded with his team, walking, and continued to look and listen, without any warning, without any of the signals required by law having been given by the appellant's agents upon approaching that particular crossing. When the appellee was in close proximity to the crossing, the train came at a rapid rate of speed, frightening his horses ; he at once leaped from his wagon to take his horses by the head and control them, but they were so frightened that he was unable to. control them, and was injured. And it is further found that the appellee was guilty of no negligence on his part.

The inference and conclusion may clearly and rightfully be drawn from the facts found that the appellee having stopped, and looked, and listened, and not hearing or seeing any approaching train, and no signal being given for that crossing, the appellee was induced, and had. the lawful right to proceed in a walk toward the crossing, and that it was by reason of the failure of the appellant's agents to give the proper signals that appellee approached within such close proximity to the crossing, and that it was by reason of being in such close proximity to the train that the appellee's horses became so frightened and unmanageable, which resulted in the injury to the appellee.

It is suggested by counsel that it is stated that the horses became frightened at the sounding of the whistle, and that the whistle was rightfully sounded at that point for the next crossing, and therefore appellant's agents were guilty of no negligence in sounding the whistle which caused the fright to the horses, but it is also stated in the verdict that they be-

came frightened at the moving train, and it appears that appellee was going up the grade at the time the train approached, and that no signal was given for the approach to the crossing of the highway that appellee was travelling upon.

The object of giving signals is to warn persons travelling upon the highway about to be crossed by the approaching train, and of the danger not only in attempting to cross the railroad track at the same time the train is running upon it at the same point, but of the danger of being in close proximity to the train with horses and vehicles, and to give travellers an opportunity not only of avoiding a collision, but danger arising from being in close proximity to it, and it is proper to presume that when such signals are given travellers will take heed and keep at a safe distance, and if they are travelling with horses liable to become frightened by being in close proximity to the train, they will stop advancing toward the crossing at once upon hearing the signal, and they have the right to rely upon the signals being given, and it will not exonerate a railroad company from liability when it has failed to give the signal for the approaching crossing, and a traveller who is upon the highway, stopping and looking and listening, and approaching slowly, and continuing to look and listen, and having now come in such close proximity that his horses became frightened at the train lawfully running upon the track, or the lawful sounding of the whistle at that point, to say the horses became frightened at the cars when lawfully running upon the track, or the sound of the whistle when lawfully sounded. As between the said railroad company and the approaching traveller, it induced him to approach to within an unsafe proximity of the crossing by the failure to give the lawful signals, and the train is not lawfully there as against the traveller without having first given the signal required by law before coming upon the crossing. *Indianapolis, etc., R. R. Co.* v. *McLin,* 82 Ind. 435; *Continental, etc., R. R. Co.* v. *Stead,* 95 U. S. 161;

*Chicago, etc., R. R. Co.* v. *Boggs,* 101 Ind. 522; *Louisville, etc., R. R. Co.* v. *Schmidt,* 81 Ind. 264.

It is suggested that to entitle the appellee to a judgment on the verdict, there should have been a finding as to the amount of noise made by the wagon, that the horses were docile, and that the appellee could have heard the signals if sounded, and would have stopped, and could have controlled his horses at that distance. We do not think so. These are matters which, if there is any presumption about them, the presumption would be in favor of the appellee. As we have said, signals are given to warn people. Why require a signal, if not upon the theory that it will be heard, and persons will take heed and avoid danger?

The presumption, if any exists, is that parties will avoid danger when warned, and not that they will knowingly, voluntarily and unnecessarily rush into danger. The appellants would have avoided all liability by having given the lawful signals.

Objection is made to the fourth instruction relating to negligence, but we do not think any question is presented by the instruction and objection to it different from that considered in passing upon the verdict, and as the jury returned a special verdict by which they were required to find the facts no harm could have resulted from it.

It is contended that the fifth instruction, given by the court, is erroneous. It relates to the measure of damages and is as follows:

" In this case, if the jury find that the plaintiff was injured by the wrongful negligent act of the defendants, the, railroad's agents and servants, and while plaintiff himself was acting with reasonable prudence, then in assessing his damages, the jury should take into account the peril, if any there was, to plaintiff's life; the suffering of body and mind, if any there was; the fact, if it is a fact, as shown by the evidence, that the injury he suffered was and is permanent; the extent of it; how far, if at all, the injury renders him

less capable and fit to pursue his calling and business; any loss of time shown; its value, if shown; any expense incurred; and so considering said elements, the jury should assess such damages within the demand of the complaint as will reasonably and justly compensate plaintiff for his injuries."

The principal objection urged to this instruction is to that portion of the instruction which states that the jury should "take into account the peril, if any there was, to plaintiff's life." It is urged that by this instruction the jury are told that they are to first consider and allow plaintiff for the peril to his life, and then in addition thereto to allow him for his suffering in body and mind; that peril is not an element of damages; that a party may be in peril and be entirely unconscious of it and not suffer therefrom.

We do not think this instruction objectionable on the grounds urged. Peril means exposure to injury, loss or destruction, imminent or impending danger, risk, hazard or jeopardy. As shown by the facts in this case, the appellee was exposed to injury by a frightened team of horses, was thrown down, trampled upon by the horses, and run over by the team and wagon, he was in imminent danger, risk and hazard, his life was jeopardized by the frightening of his team. It was clearly proper to consider the hazard and jeopardy in which he was placed, in other words, the peril to his life, and allow such damages as resulted therefrom in determining the damages which he sustained, and the suffering of both body and mind which he sustained by reason of the injury. It certainly seems to us that it can not be contended with much force that when, under such circumstances, one's life is jeopardized by the negligent acts of another and injuries follow, as in this case, they are not liable for the damages sustained by the person by reason of being put in such a perilous position.

This instruction as we construe it, and as it is plainly expressed, only authorizes the assessment of such damages

" as will reasonably and justly compensate plaintiff for his injuries," and it does not authorize the assessment of damages for putting appellee's life in peril unless injury resulted therefrom, for it concludes with the clear and concise statement that he shall only be compensated for his injuries, and we think the only reasonable construction to be placed upon it is that the jury can only allow damages for the peril, if damages resulted therefrom, and does not authorize a double compensation for damages. There was no error in giving the instruction.

The further question is presented as to the ruling of the court in refusing to require the appellee to submit to an examination by medical experts.

The bill of exceptions shows that " after the plaintiff had rested his case in chief, defendant, by its counsel, in open court requested the plaintiff to submit to an examination by medical experts, so that his true condition at the time might be determined. But this request was by the plaintiff refused, and thereupon defendant, by its counsel, moved the court to require plaintiff to submit to such medical examination, for the reason, as then stated to the court, that the testimony of the medical experts introduced by the plaintiff exhibited a great and substantial difference of opinion between them as to the true condition of plaintiff shortly after the injury, shortly before the former trial of this cause, and shortly before the beginning of this trial. But the court overruled this motion of the defendant, and refused to require plaintiff to submit to an examination of his condition by medical experts, and to this ruling of the court the defendant at the time excepted." '

It is earnestly contended and ably argued by counsel for the appellant that this ruling is error.

It appears by the statement in the bill of exceptions that this application was made upon the second trial of the cause, after the appellee had put in his evidence and rested his case, and that then the motion was not supported by any affidavit

showing any necessity for it, or any belief as to what such examination would develop.

It was a mere request of counsel during the trial of the cause, after appellee had rested without showing even that it was believed any benefit would be derived from such examination. Were it an open question we would feel constrained to hold that there was no such error committed as authorized a reversal of the judgment. But the case of *Hess* v. *Lowrey*, 122 Ind. 225, is decisive of the question as here presented. See, also, *Kern* v. *Bridwell*, 119 Ind. 226.

We are cited in support of the position of counsel for the appellant upon this question to the case of *Alabama, etc., R. R. Co.* v. *Hill*, 90 Ala. 71, where it was held to be error to refuse to order such examination, but in that case prior to entering upon the trial a motion was made to require such examination, and again during the trial it was renewed and supported by affidavits showing a necessity for and a probable benefit to be derived from such examination, but here no such showing is made. As held in the case of *Alabama, etc., R. R. Co.* v. *Hill, supra,* the ordering of such examinations are to some extent in the discretion of the trial court, and probably if an application for such examination of a party was made in a proper case, supported by such a showing as it would be an abuse of discretion to overrule it, then it might be a sufficient error to reverse the judgment.

There is no such showing in this case that we can say there was an abuse of the discretion vested in the trial court.

There is no error in the record.

Judgment affirmed, with costs.

Filed Dec. 10, 1890; petition for a rehearing overruled June 19, 1891.