Filed Nov. 13, 1894.

---◆---

No. 16,364.

The Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company v. Burton, Administratrix.

Negligence. — Damages. — Action by Administratrix. — Averment that Plaintiff was Free from Fault Not Necessary.—It is not necessary to allege in a complaint by a wife, as administratrix, to recover damages for negligently causing the death of her husband, that she was free from fault.

Same.—Averment as to Inability to See and Hear.—Effect of.—In a complaint to recover for negligently causing the death of the plaintiff's decedent at a railroad crossing, an allegation that the deceased was "unable to see or hear any engine or train of cars in motion on account of" certain described obstructions, is equivalent to an allegation that he did not see or hear the engine or train.

Same.—Contributory Negligence.—Pleading.—When Specific Controls General Allegation.—A specific allegation will not control a general allegation of freedom from contributory negligence unless the specific allegation appears to include all of the occurrence and

The Pittsburgh, Cincinnati, Chicago and St. Louis Ry. Co. *v.* Burton.

stands in conflict with that otherwise embraced in the general allegation.

RAILROAD.—*Street Crossing.—Obstructions.—Finding as to How Far Trains Could be Seen.—Negligence.*—Where one driving along a street which crosses two parallel railroad tracks, thirty-five feet apart, exercises due care in approaching and passing the first track, which is a side track, with cars standing thereon so as to obstruct the view of the main track, and then looks and discovers a train, which has not given the required signals, rapidly approaching upon the main track, and makes every possible effort to avoid a collision, it is immaterial how far he could have seen the train when he had crossed the side track, and a refusal to require the jury to make a finding upon that point is not error.

SAME.—*Killing at Street Crossing.—Neglect to Give Signals.—Limit of Damages.—Statute Repealed.*—The act of March 29, 1879 (Acts 1879, p. 173; R. S. 1881, section 4020, *et seq.*), in so far as it fixes the damages recoverable for injuries caused by the failure of a railroad company to give certain signals at a highway crossing at five thousand dollars, was repealed by the general act of April 7, 1881 (R. S. 1881, section 284; R. S. 1894, section 285), fixing the limit of damages in all actions for death by the wrongful act of another at ten thousand dollars.

SAME.—*Care Required of Traveler at Crossing.—Care Stated.—Omission of Signals.—Contributory Negligence.*—One who is about to cross over a railroad track at a street crossing is only required to exercise prudence and caution in proportion to the dangers incident to the crossing, with its obstructions and peculiar hazards; and so one who, being in possession of all of his faculties, drives toward a crossing with care, stops and looks and listens at a parallel side track thirty-five feet distant from the main track, but can hear no approaching train and can see none by reason of obstructing cars upon the side track, passes over the side track, again looks and listens and then cautiously approaches the main track and when near it discovers a rapidly approaching train, which so frightens his ordinarily gentle horses that, notwithstanding his strongest efforts, they run forward upon the track and the driver is killed, is not guilty of negligence, and damages may be recovered where it appears that the defendant's servants in charge of the train negligently omitted to give the signals required by law.

DAMAGES.—*What Damages Not Excessive.*—A recovery of nine thousand four hundred dollars for the wrongful killing of an industrious and frugal farmer, in good health, with an expectancy of thirty-eight years, who leaves surviving a wife and infant child, can not, on appeal, be said to be excessive.

SPECIAL VERDICT.—*Instruction as to.*—Where the trial court submits

The Pittsburgh, Cincinnati, Chicago and St. Louis Ry. Co. v. Burton.

two forms of special verdict with instruction to take either or modify either, or write one for themselves, but that they would "hardly be driven to this labor unless neither of the forms submitted states the facts proved in the form you prefer to state them," the instruction is not open to the objection that it intimates to the jury that they should adopt one or the other of the forms submitted.

SAME.—*Preponderance of Evidence.—Effect of Omission to Find Fact.*— An instruction that "if, on any material fact, the evidence is equal, so that there is no preponderance, you are not at liberty to find and state that fact in your special verdict," is not erroneous, as the failure to state the existence of a fact is equivalent to a finding that the fact is not proved by a preponderance of the evidence.

SAME.—*Instruction as to What Should be Returned.*—An instruction to a jury, where a special verdict is demanded, that all facts asserted by the plaintiff, if proved, should be returned and the facts asserted and not proved should be omitted, is correct.

SAME.—*Instruction as to Forms Submitted.*—An instruction to a jury who are directed to return a special verdict, that "You are not required to find any fact to be proved because you find the same suggested in a verdict, or in the verdict of the party you desire to favor," and that "If you do not consider that one of the forms submitted to you speaks the truth, as you understand it, you can not adopt it as your verdict," is not, properly construed, erroneous.

SAME.—*Conclusions Disregarded.*—A mere conclusion stated in a special verdict as a finding will be disregarded.

From the Cass Circuit Court.

*N. O. Ross* and *G. E. Ross,* for appellant.

*J. C. Nelson, Q. A. Myers, S. T. McConnell* and *A. G. Jenkins,* for appellee.

HACKNEY, J.—The appellee, as administratrix of the estate of her deceased husband, Thomas S. Burton, sued to recover damages for negligently causing the death of said Thomas at the crossing of the appellant's railway and Center street, in the incorporated town of Royal Center.

The complaint alleges that the deceased, while attempting to cross said railway in his buggy, approached the crossing from the east on said street and drove his team in a slow walk and looked and listened, but "was

The Pittsburgh, Cincinnati, Chicago and St. Louis Ry. Co. v. Burton.

unable to see or hear any engine or train of cars in motion on account of the obstruction of his view by cars and trains of cars then and there, standing upon the side tracks, which the said defendant had then and there negligently permitted to be and remain there; and on account of adjacent buildings and fences that intervened.''

In addition to the allegation of negligence in obstructing the view by cars, it was alleged that the appellant negligently failed to give any signal or warning of the approach of its engine and train, by sounding the whistle or ringing the bell in the manner and within the distances from said crossing, as required by law as to such signals, and that its train was negligently run at the rate of fifty miles an hour upon said crossing and against the buggy and team driven by the deceased, and in the collision thereby the said Thomas was killed. The allegation of noncontributory negligence by the deceased is repeated as to each charge of negligence against the company and as to all of the occurrences generally.

Two objections are urged against the complaint; first, that it is not alleged that *plaintiff*, the widow, was free from fault, and, second, that the allegation that the deceased was "unable to see or hear any engine or train of cars in motion on account of" said obstructions, was not equivalent to the fact that he could not or did not see or hear the train before going upon the track.

As sustaining the first of these objections are cited *Louisville, etc., R. W. Co.* v. *Boland,* 53 Ind. 398, and *Sullivan* v. *Toledo, etc., R. W. Co.,* 58 Ind. 26.

The first was a case involving a claim for the destruction, by fire, of certain buildings, and the ordinary rule was applied in holding that the owner was required to allege that he was free from negligence contributing to the loss.

The second was an action to recover for the negligent killing of a minor child, and it was held necessary to allege that the father, who sought to recover, was guilty of no negligence contributing to the death of the child. One's property and his minor children are subjects of his care and control, and, as in agencies, he is responsible for their conduct and entitled to their services. Not so with the wife; her husband is not, legally speaking, subject to her control and the right of action accruing to her or to his estate is that which he might maintain if living. If living and prosecuting the action for his own personal injuries, his contributory negligence alone, and not that of his wife, would defeat the action; that relationship does not exist between the husband and wife which imputes the negligence of one to the other; especially is this true where the one sues in the right of the other, as in this case.

The case of the *Indiana Mfg. Co.* v. *Millican, Admr.*, 87 Ind. 87, holds that in an action by an administrator it is not necessary to negative contributory negligence by the administrator. The fact that the widow administers is no reason for a distinction in the rule, and if the distinction could be maintained and the rule carried to its logical conclusion every complaint by an administrator would be required to negative the contributory negligence of each person interested in the recovery sought. The doctrine of imputed negligence in such cases was expressly repudiated in *Miller, Admr.*, v. *Louisville, etc., R. W. Co.*, 128 Ind. 97; *Louisville, etc., R. W. Co.*, v. *Creek, Admr.*, 130 Ind. 140.

As to the second objection to the complaint, the appellant admits that if the allegation so objected to had been omitted, the general allegations of freedom from contributory negligence would have made the complaint sufficient.

We are aware of the rule that where the facts pleaded show contributory negligence, the general negative allegation will not be sufficient, but the facts here specially pleaded, while, if not entirely sufficient of themselves to show every precaution required of one crossing a railway, they do not preclude the existence of further facts, and do not purport to set forth in detail all that he did to discover the approach of a train. In other words, we do not understand that a specific allegation will control the general allegation where the specific allegation does not appear to include all of the occurrence and stand in conflict with that otherwise embraced in the general allegation. *Warbritton* v. *Demorett*, 129 Ind. 346.

But, aside from this, we can not agree with counsel that an allegation that the decedent "was unable to see or hear," is less than that he could not or did not see or hear. If he was unable to, he could not; if he was unable to, he did not.

We conclude that the complaint was sufficient against the objections urged.

The jury trying the cause returned a special verdict, and thereupon the appellant moved the court "to require the jury to retire to their jury room and make a finding in their verdict of how far the decedent could have seen a train approaching  *  *  when he was across the easterly side track and thirty-five feet distant from the main track."

The appellant now complains that the court erred in overruling this motion.

It is not the object of the special verdict that it shall return the weight of the evidence upon every question about which witnesses testify. The facts in issue under the pleadings are required, and not the abstract questions of evidence or evidentiary details. *Whitworth* v. *Ballard*, 56 Ind. 279.

The jury did find that "when he had passed the west side of the defendant's car that stood in the said Center street as aforesaid, he looked north and saw the defendant's train approaching upon said main track from the north at a high rate of speed, to wit, at forty-five (45) to fifty (50) miles an hour, without sounding bell or whistle, when he instantly pulled vigorously upon his lines and endeavored to stop his horses that were, by that time, ten feet from defendant's main track, but that his team had, by this time, discovered the said approaching train, and become at once greatly frightened and unmanageable; that he exercised his utmost efforts to stop his team to keep them off defendant's track, but was unsuccessful; that finding he was unable to stop his team, he pulled vigorously upon his left line and struck his off horse and urged his team to turn to the left to escape a collision, but without success, and was struck by said moving engine and train and injured and killed."

If he used proper care up to the time he passed the car on the side track; if, when he had passed the standing car, he saw the train, and if, after seeing it, he did all that was possible to do to avoid collision, and we think this is the effect of the finding quoted, then the presence of a finding that the train was one hundred or one thousand feet from him when he first saw it would not be of controlling force against the conclusions of due care on the part of the deceased.

In the court's instruction numbered one, two forms of special verdict were submitted to the jury, with directions to take either or modify either, or write one for themselves to meet the facts as they might find them, and stated that they would "hardly be driven to this labor unless neither of the forms of verdict submitted * states the facts proved in the form you prefer to state them."

This statement, it is insisted, was an intimation to the jury that they should adopt one form or the other.

We are unable to believe the language employed capable of the construction counsel give it. The instruction, when all of its parts are considered, was a plain direction that the jury could adopt either form or modify either form, or reject both and prepare a form to suit their finding, but that the labor of preparing a form would not be necessary if either form stated the facts as found. There is no complaint that this direction was not proper.

The second of the court's charges contained the following: "And if, on any material fact, the evidence is equal, so that there is no preponderance, you are not at liberty to find and state that fact in your special verdict."

Appellant insists that this was an error, and that where the evidence fails to preponderate in favor of an essential fact, the verdict should find expressly the nonexistence of that fact. To this insistence is cited *Gulick* v. *Connely*, 42 Ind. 134.

We do not understand the rule to be as counsel state it, nor do we understand the case cited to have so held. The duty of the court or jury stating the facts specially is not to state the failure of one who assumes the burden of an issue, but the failure to state the existence of the fact is equivalent to finding the nonexistence of the fact. A fact not found is a finding that the fact is not proven by a preponderance of the evidence. *Brazil Block Coal Co.* v. *Hoodlet*, 129 Ind. 327, and cases there cited.

The court instructed the jury that the maximum recovery allowed to the appellee in the event the finding should be for her was ten thousand dollars. The appellant claims that the limit should have been stated at five thousand dollars.

By the act of March 29, 1879, Acts 1879, p. 173, R.

S. 1881, sections 4020, 4021 and 4023, certain signals were required to be given by railway companies before running their trains over highway crossings, and a right of action was given for injuries sustained by reason of the failure to give such signals, and the amount of the recovery therefor was limited to five thousand dollars.

By the act of April 8, 1881, Acts 1881, p. 590, R. S. 1881, section 4020, the first section of the act of 1879 was amended so as to require the engine whistle to be sounded distinctly three times not less than eighty nor more than one hundred rods from any highway crossing, and to ring the engine bell continuously from the time of sounding such whistle until the engine should fully pass such crossing. As to the right of action so given by the act of 1879 and the limit in amount of damages so prescribed, the amending act made no change.

By the act of April 7th, 1881, Acts 1881, p. 241, section 8; R. S. 1881, section 284; R. S. 1894, section 285, it was provided that when the death of one is caused by the wrongful act or omission of another an action might be maintained therefor, and the limit in damages was provided at ten thousand dollars, such sum to inure to the exclusive benefit of the widow and children, or next of kin. The latter act does not expressly repeal the act of 1879, and it remains to be determined whether there is a repeal by implication as to the amount of recovery.

In Sutherland on Statutory Construction, section 145, it is said that "a new statute which affirmatively grants a larger jurisdiction or power, or right, repeals any prior statute by which a power, jurisdiction or right less ample or absolute had been granted."

This illustration is there cited from *Regina* v. *Llaugian*, 4 B. & S. 249: "An English statute authorized the removal of poor persons likely to become chargeable. The

power was given to two justices, one to be of the *quorum*. A later statute recited that act and repealed the provision for removal on the probability of their becoming chargeable, and enacted that a removal might be made of such persons after they had become chargeable to the parish, by two justices of the peace, without mention of the *quorum*. It was held that the requirement that one of the justices be of the *quorum*, contained in the previous act, was repealed by implication."

An early case in this State, in circumstances and principle much like the question under review here, holds that "as a general rule it is not open to controversy, that where a new statute covers the whole subject-matter of an old one, adds offenses, and prescribes different penalties for those enumerated in the old law, then the former statute is repealed by implication; as the provisions of both can not stand together." *President, etc.*, v. *Bradshaw*, 6 Ind. 146.

To the same, effect are the *Madison, etc., R. R. Co.* v. *Bacon*, 6 Ind. 205; *Jeffersonville R. R. Co.* v. *Millet*, 8 Ind. 255; *Board, etc.*, v. *Potts*, 10 Ind. 286; *Indianapolis, etc., R. R. Co.* v. *Davis*, 10 Ind. 398; *Evansville, etc., R. R. Co.* v. *Lowdermilk, Admr.*, 15 Ind. 120; *Hayes* v. *State*, 55 Ind. 99; *Dowdell* v. *State*, 58 Ind. 333; *Wagoner* v. *State*, 90 Ind. 504. See also *Norris* v. *Crocker*, 13 How. (U. S.) 429; *People, etc.*, v. *Mayor of New York*, 32 Barb. 102 (121).

If the provisions of the act of 1879, extending the right and limiting the recovery, had been omitted therefrom, we apprehend that the act of April 7th, 1881, would have supplied that right and limited the recovery. It is evident, therefore, that the act of 1881 includes these elements of the act of 1879, and grants a larger right, not only in the increase of the amount of possible recovery, but in defining the persons to whom the recovery

shall go. It is evident that the Legislature did not intend to continue the two provisions as to the amount of recovery, not only from the fact that the new act points out the persons who may recover, but because there could be no possible reason for limiting the recovery to five thousand dollars for wrongfully causing the death of one by a failure to give required signals, when ten thousand dollars could be recovered for negligence of any other character resulting in death. We conclude that the limiting clause of section 4 of said act of March 29th, 1879, is repealed.

The court gave the following instruction, to which exception is made: "The burden rests upon the plaintiff of proving the material facts averred in the complaint. Whether the facts are material, however, need not cause you trouble, as that is a question of law for the court. You find what facts have been proved, and in determining what have been proved, it will be necessary for you to consider what facts have been attempted to be proved, and by whom, that is, by which party. If the plaintiff asserts a fact, and offers evidence to prove it, and the defendant offers evidence to disprove it, you will then weigh all of the evidence on that point. If you find that the evidence of the plaintiff outweighs that of the defendant, you should find the facts proved, and it should become a part of your verdict. If the evidence of the defendant upon that point outweighs that of the plaintiff you will leave that fact out of your verdict. And it may arise that you will find the evidence equally balanced upon a fact asserted by the plaintiff, that is, you will find that after you have carefully considered all of the evidence upon such fact upon both sides you are unable to determine which side has the preponderance. In such case you should omit the fact asserted from your verdict. These remarks apply to the facts averred, and upon

which proof was offered by the plaintiff; the same will apply to facts asserted by the defendant. After plaintiff has made proof of facts to entitle her to recover, her recovery may be defeated by other facts proved which avoid the effect of the facts so proved by the plaintiff. These facts are averred by the defendant, and constitute a part of the defense. The burden of proving such facts is upon the defendant by a fair preponderance of the evidence."

It is objected that the jury are told that the plaintiff must prove the material facts, and are not advised what are material facts, but are advised that what facts may be material need not trouble them since that was a question of law for the court. The plain direction of the court by this instruction is that all facts asserted by the plaintiff, if proven, should be returned by the verdict, and those facts so asserted and not proven should be omitted. This was correct since the jury were to return a special verdict, and the facts asserted by the plaintiff and not returned would be considered by the court as not proven, and those returned would be by the court weighed in the light of their materiality, and if found to cover all of the issues necessary to a recovery, and not overthrown by facts found in behalf of the defendant would, as a matter of law, authorize judgment for the plaintiff. There is no place for the criticism that in the event the evidence of the plaintiff's witnesses established a fact asserted by the plaintiff, adversely to the plaintiff, it would be the duty of the jury, under this instruction, to so return. The fact asserted by the plaintiff, and not proven, was directed to be omitted. In the event supposed, the fact would necessarily be omitted, and if essential to a recovery would defeat the action.

Another instruction was in submitting the forms of special verdict as prepared by the parties respectively.

One expression to which exception is taken is, "you must not forget that you are not required to find any fact to be proved, because you find the same suggested in a verdict, or in the verdict of the party you desire to favor." It is said that the suggestion that it was possible for the jury to entertain a desire to favor a party gave them a wrong impression of their duties.

In the absence of evidence, there is no permission to the jury to extend favors to the litigants. In other charges given, however, the burden of proof was clearly defined and the jury impressed that this burden should be discharged before a fact could be found in favor of the party asserting it. The phrase "the party you desire to favor" was so manifestly employed in the sense of "the party with whom you find the merits," that the jury were not given to understand that their verdict could be bestowed by favor. If the expression were palpably employed as appellant contends, it would be difficult to determine that the appellant was harmed by it.

This further sentence in the instruction is criticised: "If you do not consider that one of the forms submitted to you speaks the truth, as you understand it, you can not adopt it as your verdict."

It is said that this was erroneous, since the verdict was not to be found upon what the jury understood, but upon the facts to be found by a preponderance of the evidence.

Verdicts are necessarily rendered, when properly rendered, upon the understanding of the jury, and the basis of that understanding is the truth of the facts as they find such facts established by a preponderance of the evidence. No valid objection can be urged, we believe, against this instruction.

It is insisted, in support of the sixth and seventh

causes for a new trial, that the verdict is not sustained by the evidence in so far as it is found that the deceased exercised due care and did not contribute to the collision by his own negligence.

The collision occurred at the crossing of Center street, running east and west, and the main track of the railway running north and south. East of the main track, at the crossing, are two side tracks, the distance between the inner rails of the outer tracks being 34 feet and nine inches. The deceased was approaching the crossing from the east, driving slowly a span of gentle horses to a light top buggy without side curtains; on his right, or the north side of Center street, and extending up to within four feet of the first side track and standing immediately north of the street, was a warehouse, and before reaching the warehouse, for more than one square, no view could be had of a train approaching the crossing from the north; at the crossing, the street is sixty feet wide, and at the crossing of the street and the first side track, the street was obstructed by a box car standing more than half its length into the street and extending near the used portion of the crossing. So driving, the deceased reached a point where his horses passed the end of the box car, when he checked them, leaned forward to get a view to the north, unobstructed by the car, and although he looked and listened he could neither see nor hear the approaching train, though he could, from that point, see but about one hundred feet up the main track. He then started forward, and when he had passed the car he looked north and saw the train approaching at the rate of 45 or 50 miles an hour. He instantly pulled vigorously upon the lines, endeavoring to stop the horses, which had then come within ten feet of the main track; the team became frightened and he could not stop them, and immediately, upon observing this, and acting with

all haste and great strength, he pulled upon the left line and struck the horse nearest the main track, in an effort to guide the team south and away from the track, and at this instant the locomotive crashed upon him. While approaching the crossing, and in his efforts to see and hear and avoid collision with appellant's train, the deceased was in possession of all of his faculties.

Not attempting to weigh the evidence, but viewing that most favorable to the appellee, the conduct of the decedent in that moment of peril was as we have stated. Many general principles and numerous authorities are cited by appellant's able and diligent counsel to support the claim that the decedent was not free from negligence.

These principles and authorities require no more than that the decedent should have exercised prudence and caution in proportion to the dangers incident to the crossing with its obstructions and peculiar hazards.

Perhaps a better statement of the rule is that of appellant's counsel: "The care to be exercised by him should have been commensurate with the danger to be encountered."

The measure of care is not that the traveler shall secure absolute freedom from the dangers which flow from the negligence of railway operatives. If such were the requirement, an utter abandonment of care could prevail on the one side, with a high degree of care on the other, and with no remedy for injuries. It is certainly sufficient, for the ends of justice, that, when the company has been negligent, the traveler has done all that he reasonably could to avoid collision, and that it has been all that prudence and reasonable caution would suggest under the circumstances, and consistent with his right to use the highway crossing.

Among the few things suggested by the appellant as necessary for the decedent to have done, and which it is

claimed that he did not do, it is said: "When he had passed the obstruction and could see the train approaching, he should have stopped his team instantly, or turned them out of the way of danger."

It must be remembered that, as found by the jury, at the time he had passed the box car, he looked and saw the train coming at the rate of 45 or 50 miles an hour, and when he had made an unsuccessful effort to stop his team, it then being within ten feet of the main track, he made a faithful and diligent effort to do the very thing suggested, but failed. Is it wonderful that a vigorous effort to stop the team should have failed? Hardly, when we consider that horses are not as subject to command and as free from excitement in a perilous situation as are experienced persons, and when we remember that they could have been placed in no situation more certain to frighten them and render them uncontrollable.

Appellant urges that the decedent having gotten his team so near the track that they became frightened and unmanageable is contributory negligence, and the fright of the team should not be deemed a circumstance excusing the avoidance of injury.

The following from *Rhoades, Admx.*, v. *Chicago, etc., R. W., Co.*, 58 Mich. 263, is quoted: "If a person approaching a railroad crossing *without reasonable caution and care,* particularly, where a fast train is due and approaching, and by reason thereof his team becomes unmanageable, goes upon the track and injury results, there is such contributory negligence as will prevent a recovery."

This may be true, "without reasonable caution and care," but not in the presence of "caution and care." *Terre Haute, etc., R. R. Co.* v. *Brunker*, 128 Ind. 542.

And it is said that when he discovered the approaching train he should have turned his team to the north

between the two side tracks, where there was a wagon way. A choice of the direction in which to turn from the danger could not be made with the cool deliberation of one in no peril and not balked by the natural instincts of the animals to fly from the approaching danger, instead of turning towards it. To have turned the team towards the north would have required the overcoming of the fright from which the horses were suffering and to have induced them to face the train and remain within a few feet of it while it passed. The effort to do so would have been a probable failure, but, in considering what Burton was required to do under the circumstances, it should not be overlooked that the time in which to make a choice was not that which permitted deliberation, the train was coming at the rate of 500 feet each seven seconds, or more than 70 feet in a second, and its coming imperiled life. Under the circumstances, and looking at the situation without fear and with time for reflection, we have no doubt that his choice to drive the team down the track was better than to have adopted the course suggested for him by the appellant.

It is further insisted that the evidence does not support the finding that the decedent listened, or that he did not hear the train. We find evidence of his conduct when he halted at the end of the box car, leaned forward and looked towards the north; his actions were described to the jury, and while the illustrations of the witnesses are not given in the record, it does appear that they gave illustrations. The manner of inclining the head, the fact that he looked, the time and manner of going forward after looking, are all circumstances from which the jury might reasonably have determined that he listened. The fact that some persons more favorably situated than the deceased heard the train, and that others did not hear it, and considering the obstruction of the view

and the hearing by the box car, and the fact that the decedent pressed forward after looking and listening, are all circumstances from which the jury were required to determine whether he heard or did not hear the approaching train. We are certainly unable to say that the weight of the evidence was not as found by the jury.

It is urged that the finding of negligence on the part of the appellant, and the assumption that any act or omission of the appellant caused the collision, are not supported by the evidence.

One finding of negligence returned by the jury in their special verdict, is as follows:

"10. We further find that upon said 4th day of October, 1890, as defendant's train number twenty (20) aforesaid approached said Center street crossing in said town of Royal Center, defendant omitted, neglected and failed, when said train was not less than eighty (80) rods and not more than one hundred (100) rods from said Center street crossing, to sound the whistle attached to the locomotive engine of said train, or any whistle, three times distinctly, and then and there omitted, neglected and failed to ring the bell attached to said engine, or any bell, continuously from the time when said train came within eighty (80) rods of said crossing until said engine had passed said crossing, and omitted, neglected and failed to sound any whistle or ring any bell after the said train came within eighty (80) rods of said crossing until so near it that it was then and there too late for said Thomas S. Burton to see and hear said train and escape collision with it; that defendant's whistle upon said engine was sounded by giving one long blast for the station at Royal Center when between the Chicago and Runkle crossing as it approached said Center street crossing, a distance from said Center street of about 2,500 feet."

As to whether the bell was rung, the appellant expressly concedes that there was conflict in the evidence, so that we may presume that the jury held that conflict most favorable to the appellee. There was evidence from which the jury might have found that the whistle was not sounded for the crossing where the collision occurred, and that the only sounding of the whistle within two miles of that crossing was one blast near a quarter of a mile north of Runkle crossing, which crossing was 1,800 feet north of Center street crossing.

This neglect of a duty expressly enjoined by statute, if the injury can be attributed to it, is sufficient to charge the appellant with the consequences. R. S. 1881, sections 4020, 4021, *supra; Terre Haute, etc., R. R. Co.* v. *Brunker, supra; Baltimore, etc., R. R. Co.* v. *Walborn, Admr.,* 127 Ind. 142; *Cincinnati, etc., R. R. Co.* v. *Butler,* 103 Ind. 31; *Chicago, etc., R. R. Co.* v. *Boggs,* 101 Ind. 522; *Cincinnati, etc., R. W. Co.* v. *Hiltzhauer,* 99 Ind. 486; *Indianapolis, etc., R. R. Co.* v. *McLin,* 82 Ind. 435; *Pittsburgh, etc., R. W. Co.* v. *Martin,* 82 Ind. 476; *Chicago, etc., R. R. Co.* v. *Fenn,* 3 Ind. App. 250.

In the absence of the statute requiring that the engineer shall, "when such engine is not less than eighty nor more than one hundred rods from such crossing, sound the whistle on such engine distinctly three times, and ring the bell attached to such engine continuously from the time of sounding such whistle until such engine shall have fully passed such crossing," it would be the duty of the railway company to give reasonable and timely warning of the approach of its trains to highways.

This statute expresses the legislative definition of the character and extent of warning which shall be required, and less than the warning required is not deemed reasonable, and constitutes negligence. The duty enjoined

is for the benefit of persons entitled to use the crossings, and was designed to give such timely notice of the approach of trains as would enable such persons to avoid the dangers of the crossing. Crossings are dangerous, but the public and the railways have the right to use them, and to save human life it has been provided that one blast of the engine whistle is not enough, nor are two sufficient, but there shall be three, and the bell shall be rung continuously for eighty rods. This is necessary that if the traveler is occupied, and does not hear the first or the second he may hear the third, or if his conveyance makes such noises that he does not catch the first sound he may have further opportunity, and if he happens to lose all the whistle blasts he may have an opportunity, while the train is running eighty rods, to hear the bell. But appellant insists that the decedent could have heard the sound of the whistle given at the approach to Runkle crossing, and indulges the presumption that he did hear it, concluding, therefore, that further sounding of the whistle or ringing of the bell was unnecessary. The weakness of this position is in the fact that there is no evidence that he did hear the sounding above Runkle crossing, and the jury find that he did not hear it.

It is said that though negligent in failing to give the signals it does not appear that the collision is attributable to that negligence.

In *Chicago, etc., R. R. Co.* v. *Boggs, supra*, this court quoted with approval from Pierce on Railways, 350: "The omission is calculated to mislead the traveler, and to assure him that the coming of the train is not imminent."

It was there further quoted from *Pittsburgh, etc., R. W. Co.* v. *Martin, supra*, as follows: "The signal required by the law not being given, the view being obstructed, and the plaintiff not being hard of hearing, he had no reason to suppose that the train was within eighty rods of

the crossing; he was misled by the defendant's negligence in omitting the proper signal; he was not guilty of negligence in assuming, in the absence of any indication to the contrary, that the company was obeying the law, and that no engine was advancing toward the crossing within a distance of eighty rods.''

In *Terre Haute, etc., R. R. Co.* v. *Brunker, supra*, it was said that the failure to give the required signals was an inducement to the traveler to approach within an unsafe proximity to the crossing. The care exercised by the decedent to learn of the approach of the train, and the effort made by him to avoid the collision after he discovered its approach, are controlling circumstances in reaching the conclusion that if he knew of its approach he would not have gone upon the track. Having once reached the conclusion that he exercised diligence; that the appellant was negligent, and that but for such negligence the collision would probably not have occurred, it follows, as a necessary consequence, that the negligence was the cause of the collision. In the view taken of the case, it is not necessary to consider the effect of the alleged leaving of the box car across the street as an element of negligence combining to establish appellee's cause of action, nor need we determine whether the high rate of speed was negligent under the circumstances, nor do we examine the· question as to whether it was the duty of the appellant to have maintained a flagman at the crossing.

Complaint is made that the assessment of damages in the sum of $9,400 was excessive. The true measure of recovery is the pecuniary loss of those entitled to recover. The loss to his child of the father's care and training is one element of this measure of damages. *Board, etc.,* v. *Legg, Admr.*, 93 Ind. 523. The loss to the wife of a means of support in the service and as-

sistance of her husband is one element of the measure of damages. *Board, etc.,* v. *Legg, Admr., supra; Korrady, Admx.,* v. *Lake Shore, etc., R. W. Co.,* 131 Ind. 261. As tending to establish the extent of these losses, it is proper to consider the probable future earnings of the husband and father, and his age, health, strength, occupation, habits, opportunities and capability are elements of this consideration. *Ohio, etc., R. W. Co.* v. *Voight, Admr.,* 122 Ind. 288; *Hudson* v. *Houser, Admr.,* 123 Ind. 309; *Lake Erie, etc., R. R. Co.* v. *Mugg, Admr.,* 132 Ind. 168; *Louisville, etc., R. R. Co.* v. *Wright, Admr.,* 134 Ind, 509. These cases recognize the rule that the gross earnings should be subject to deduction on account of the reasonable cost of his own support, and that the present payment of the sum awarded in damages is a proper circumstance in determining the amount which shall be allowed as the equivalent of the earning capacity of the deceased.

But it is said that "where the relation of the party, whose death has been caused, to those for whose benefit the suit is being prosecuted, has been shown, and his obligation, disposition, and ability to earn wages or conduct business, and care for, support, advise, and protect those dependent upon him, the matter is then to be submitted to the judgment and sense of the jury." *Louisville, etc., R. W. Co.* v. *Buck, Admr.,* 116 Ind. 566; *City of Wabash* v. *Carver,* 129 Ind. 552. The ultimate question of the amount resting within the province and sound discretion of the jury, their finding will never be disturbed where the court can not say that improper motives have swayed them in ascertaining the amount returned. *Ohio, etc., R. W. Co.* v. *Collarn,* 73 Ind. 261; *Louisville, etc., R. W. Co.* v. *Pedigo,* 108 Ind. 481; *City of Wabash* v. *Carver, supra.*

Burton's expectancy was thirty-eight and one-tenth

years; he was in good health and sound constitution, temperate, industrious and frugal; he was a farmer who could earn, as some of the witnesses stated, on a rented farm, fifty dollars per month. His personal expenses were not estimated. It will be seen that during his expectancy his probable earnings would have aggregated a large sum. The value of his services to his wife and his infant child until it attained its majority of a personal character, and independent of those things purchaseable from his earnings are not estimated in the evidence nor by counsel, and the appellant, we infer, would exclude any estimate by the jury of that element of damage. We do not think it should be excluded. These the jury, in the range of the discretion given them under the law, and the evidence, and applying the results of their common observation and daily experience may estimate and add to the sum shown to be the net earning capacity of the decedent, after deducting his personal expenses, as they may be estimated, and considering the value of the present payment of the sum to be awarded.

We can not say, in view of the rules suggested and the facts stated, that the jury abused their discretion in assessing the sum found, though we might not have awarded so large a sum.

Objection is made that the special verdict finds a conclusion and not a fact in the finding that Burton was killed "by and because of the negligence and carelessness of the defendant, and wholly without any fault or negligence" on his part.

The Pittsburgh, Cincinnati, Chicago and St. Louis Ry. Co. v. Burton.

In the tenth finding of the jury, above quoted, the facts are found, which, as we have already shown, establish the negligence *per se* of the appellant.

In the ninth, eleventh, twelfth, and fourteenth findings of the jury the character of the crossing, and the obstructions to the view and from the sounds of an approaching train, the speed of the train and the conduct of the decedent, are all given in detail and are sufficient, as we have stated them and have already held, to establish the due care of the decedent in attempting to cross the tracks.

If we should hold that the finding objected to is a conclusion and not a fact, it would be our duty to disregard that finding, and if we should disregard it, enough is found to establish both the negligence of the appellant, causing the death, and the absence of negligence on the part of Burton contributing, and the finding of a conclusion would not vitiate the verdict. *Terre Haute, etc., R. R. Co. v. Brunker, supra.*

There are other questions suggested in the appellant's brief, which have already received our consideration or are not so argued as to advise the court of any substantial objection to the proceeding of the lower court.

Finding no available error in the record, the judgment of the circuit court is affirmed.

Filed April 17, 1894.

## On Petition for a Rehearing.

HACKNEY, C. J.—Again the appellant urges the proposition that Burton was guilty of contributory negligence upon the facts found by the jury. A decision of the question presented depends upon the construction of the finding rather than upon any differences between counsel and the court as to the law of contributory negligence. The finding is that from which we quoted first in the

original opinion. It was found that the view and the hearing of an approaching train was cut off from Burton for 375 feet before reaching the railway tracks; that he proceeded slowly until his horses passed the end of the box car, when he checked them, leaned forward to get a view to the north, unobstructed by the car, and, not seeing or hearing the approaching train, and being unable to see more than one hundred feet up the main track, he started forward "and when he had passed the west side of the car * * he looked north and saw the * train approaching * * at forty-five to fifty miles an hour * * * when he instantly pulled vigorously upon his lines and endeavored to stop his horses that were by that time ten feet from defendant's main track, but that his team had by this time discovered the said approaching train and become greatly frightened and unmanageable;" then followed his efforts to keep the team from the main track. In this connection we restate the facts found, that the box car stood 34 feet and 9 inches from the main track.

Counsel for the appellant endeavor to maintain that, under the facts stated, Burton proceeded 11 feet and 9 inches from the car before again looking north, allowing 10 feet from the horses to the main track and 13 feet from the team and vehicle back to Burton. So construing the facts, it is claimed that it was negligence to proceed 11 feet and 9 inches in plain view of the train without looking to see if it was approaching. With this construction of the facts, we did not and do not now agree. The language of the finding is not that *"when he had passed the car and his horses had gone to within ten feet of the main track he looked and then pulled upon his lines."* The sense of the language of the finding is that *"as soon as"* he had passed he looked, or, *"just after the moment"* of passing he looked, or, he passed the car, *"at which time"* he looked. The quoted words are definitions of

the word *"when"* as given by the Century Dictionary and sustained by Webster's International Dictionary, edition 1893.

When he had passed the car and had looked, and, when he had pulled upon the lines and endeavored to stop the horses, it was then that the horses were "ten feet from defendant's main track." If we are correct in this construction of the finding, it showed diligence and not contributory negligence on the part of Burton.

The petition is overruled.

Filed Nov. 16, 1894.