## The Louisville and Nashville Railroad Company v. Williams.

[No. 2,465.    Filed July 1, 1898.]

EVIDENCE.—*Weight Of.*—*Contributory Negligence.*— The Appellate Court will not weigh the evidence for the purpose of determining whether or not the plaintiff in an action for damages on account of personal injuries was guilty of negligence contributing to her injury. *p. 577.*

CONTRIBUTORY NEGLIGENCE.—*When Question for Jury.*—When the facts are such that different conclusions may reasonably be drawn therefrom, the question of contributory negligence is one of fact for the determination of the jury under proper instructions from the court. *pp. 577-581.*

INSTRUCTIONS.— *Contributory Negligence.*— *Railroads.*— *Damages.*— No error was committed in instructing the jury in the trial of an action against a railroad company for damages on account of personal injuries received at a railroad crossing, that the jury might take into consideration the failure of the defendant to sound the whistle and ring the bell as required by statute in determining the question of plaintiff's conduct before and at the time she approached the crossing, where the jury was also instructed that the negligence of the defendant in failing to give the statutory signals did not excuse plaintiff from the exercise of due care. *pp. 581-588.*

SAME.—*Damages.*—*Permanent Injuries.*—*When Question of Fact.*— Where there was evidence from which the jury could have concluded that plaintiff's injuries were permanent, no error was committed in instructing the jury that in the assessment of damages they might determine whether or not the injuries were permanent, although there was no direct evidence that the injuries were of a permanent nature. *p. 588.*

DAMAGES.—*Assessment.*—*Personal Injuries.*—*Peril of Life.*—The jury

may take into account the peril of plaintiff's life at the time of the accident as an element of damages in the assessment of damages in an action for personal injuries. *pp. 588, 589.*

From the Posey Circuit Court. *Affirmed.*

*Alexander Gilchrist* and *Curran A. De Bruler,* for appellant.

*G. V. Menzies,* for appellee.

ROBINSON, J.—Appellee recovered a judgment for alleged personal injuries caused by appellant's negligence. The error assigned is the overruling of appellant's motion for a new trial. The only reasons for a new trial which are discussed by counsel are, that the verdict is not sustained by sufficient evidence, the giving of certain instructions, and the refusal to give others requested by appellant.

The jury returned a general verdict, and with it answered three interrogatories, which in no sense conflict with the general verdict. It is earnestly argued that on the evidence of appellee herself, she was guilty of contributory negligence in approaching the crossing. But a careful review of all her evidence and all the other evidence in the case leads us to the conclusion that we can not say, as a matter of law, she was guilty of such negligence without weighing the evidence, and this we can not do.

What appellee says she did at the time must be taken in connection with all the other facts and circumstances in the case. The jury may have concluded from all the testimony, and could have done so, that the train was running about thirty-five miles an hour; that it neither sounded the whistle nor rang the bell at any time as it approached the crossing; that appellee stopped and looked and listened for a train at two different points within 300 feet of the crossing, the last about 150 feet, and saw and heard nothing either

time; that when within fifty feet of the crossing and as soon as she could look both ways she did so; that not knowing from which direction a train might be coming, she looked in the wrong direction first, and when she did look in the right direction, the train was upon her; that there were obstructions consisting of picket fence, corn, briars, weeds, and brush partially obscuring the view in the direction from which the train was coming, after she reached the end of the cut; that the cut extended up to the right of way; that some wind was blowing in a direction which would carry the noise of the train from her as she approached the crossing; that when a person is on the highway in this cut, it depends on how the wind is blowing whether he can hear an approaching train; that a person going down the hill into the cut in a buggy could not hear the train until the person got to the end of the cut, unless the train was down in front of the person; that a person cannot see the railroad track on the left until near the end of the cut, and that he can not see up the railroad track until he comes out of the cut. The jury answered, in an interrogatory returned with the general verdict, that if appellee had stopped at any point from the top of the hill to the crossing, she could not have heard the noise of the approaching train. The evidence is conflicting as to how far up the track she could see had she stopped within fifty feet of the track. The jury had the right to find the speed of the train and the speed at which appellee was going, and they did find she could have heard the noise of the train at no time. She had stopped twice on approaching the crossing. She saw no train and heard none. Whether she should have stopped a third time, immediately before entering upon the track, is a question about which there may well be a difference of opinion. The jury answered the question by its gen-

eral verdict. This court can not take the same testimony, shorn of much of its probative effect, and decide the same question another way.

It is not the intention to go contrary to any rule laid down by the Supreme and this court. It is no longer a question in this State of what the rule is, but, what is its application to the particular case. In every such case submitted to a jury, the ultimate question they are called upon to decide by a general verdict, and which they do decide, and which it has been held over and over they may decide, is whether the complaining party acted as a reasonably prudent person would act under like circumstances. The jury and the trial court had, as no other tribunal can have, all the facts and circumstances placed before them, and they have answered the question in appellee's favor. That appellee did not stop the third time, and look and listen for a train, or that she started her horse in a trot after she stopped the last time, is not the decisive test. It is no more than an important and material fact to be considered by the jury in applying that which is the decisive test, namely, did appellee under all the circumstances surrounding her at the time, act as a reasonably prudent person would have acted. Thus, in a case where the evidence tended to show that a person did not look in the direction a train was approaching, and that if she had looked, she could have seen it in time to have avoided injury, the court said, and the doctrine is approved by the Supreme Court, that, "the fact that the deceased did not look for the approaching train was a material and important fact to be considered by the jury upon the point of contributory negligence; but her omission to do so was not in law decisive against a recovery." *Ohio, etc., R. W. Co. v. Stansberry*, 132 Ind. 533.

Whether she should have stopped or driven in a

walk must be taken in connection with the precautions she had already taken; that she heard neither whistle, bell, nor the noise of a train; that she saw nothing and heard nothing indicating an approaching train. What she should have done under all the circumstances was a question about which reasonable men might differ. Thus it is said: "It is plain, however, we think, that in very many cases the question as to whether a person injured at a crossing exercises ordinary care under the particular circumstances, is one for the jury. The court cannot adjudge that negligence exists as a matter of law in any case, unless the facts are undisputed and the conclusions to be drawn therefrom are indisputable. The question of negligence must be submitted to the jury as one of fact, not only where there is room for difference of opinion between reasonable men as to the existence of the facts from which it is proposed to infer negligence, but also where there is room for such difference as to the inferences which might fairly be drawn from conceded facts." *Cincinnati, etc., R. W. Co.* v. *Grames*, 136 Ind. 39, and cases cited. *Cleveland, etc., R. W. Co.* v. *Moneyhun*, 146 Ind. 147; *Board, etc.*, v. *Bonebrake*, 146 Ind. 311.

It cannot be denied that in many cases a court may adjudge, as a matter of law, upon the undisputed facts in the case, that negligence does or does not exist. But, as is said by Judge Cooley in his work on torts, (2nd ed.) page 805, "In the great majority of cases the question of negligence on any given state of facts must be one of fact." In the case at bar it can not be said, after a careful review of all the evidence, that the facts going to show contributory negligence are undisputed, nor can it be said that the conclusions to be drawn from these facts are indisputable. The trial

court properly submitted the question to the jury and the conclusion reached by them ought to stand.

It is well settled that there is a large class of cases where the court will say upon the undisputed facts that the injured party was guilty of contributory negligence, and it is also well settled that there is another large class of cases where the court will say that the injured party was not negligent; and it is equally well settled that between these two is another class where different conclusions may be drawn from a certain state of facts, and it is uniformly held that this class belongs to the jury under proper instructions from the court. As has been forcibly said in *Railroad Co. v. Stout*, 17 Wallace, 657, "Certain facts we may suppose to be clearly established from which one sensible, impartial man would infer that proper care had not been used, and that negligence existed; another man equally sensible and equally impartial would infer that proper care had been used, and that there was no negligence. It is this class of cases and those akin to it that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proved, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain." The above language is quoted with approval in *Ohio, etc., R. W. Co. v. Collarn*, 73 Ind. 261, 38 Am. Rep. 134. See, also, *Wabash, etc., R. W. Co. v. Locke*, 112 Ind. 404; *Louisville, etc., R. R. Co. v. Crunk*, 119 Ind. 542.

The eleventh reason for a new trial questions the eighth instruction given to the jury at appellee's re-

quest. This instruction is as follows: "In determin-
ing the question of plaintiff's conduct before and at
the time she approached the crossing, you may con-
sider the evidence as to the locality and obstructions,
if there were such, which obstructed or interfered
with plaintiff's view, or prevented her from see-
ing an approaching train; also anything, if there was
such, which interfered with her hearing the noise
made by a train in motion; also the failure of defend-
ants, if that be true, to sound the whistle and ring the
bell as required by statute." Appellant requested
the court to instruct the jury that the question
whether there was or was not a failure on the part of
appellant's servants to blow the whistle for the high-
way crossing as required by the statute, could not be
considered by the jury in determining whether appel-
lee was at the time exercising due care. The question
is thus presented, whether in cases of this character,
the failure to give the statutory signals can be consid-
ered in determining the question of the contributory
negligence of the injured party. Upon principle, the
eighth instruction is right. Nor is it at variance with
the adjudged cases. The court had warned the jury
that the negligence of the company in failing to give
the statutory signals did not excuse the want of due
care on the part of appellee. The instructions must
be considered as a whole. It cannot be said, as argued
by appellant's learned counsel, that under the in-
structions the jury might decide that appellee was not
guilty of contributory negligence because the statu-
tory signals were not given. The instruction does not
tell the jury that, if they find certain facts to exist
they would show want of contributory negligence, but
they were told that in determining the question of
appellee's conduct before and at the time she ap-
proached the crossing they might consider certain

things; among others, the failure to sound the whistle and ring the bell as required by statute. They were told in other instructions what that conduct should be in order to entitle her to recover.

In *Pittsburg, etc., R. W. Co.* v. *Martin*, 82 Ind. 476, the court said: "The signal required by the law not being given, the view being obstructed, and the plaintiff not being hard of hearing, he had no reason to suppose that the train was within eighty rods of the crossing; he was misled by the defendant's negligence in omitting the·proper signal; he was not guilty of negligence in assuming, in the absence of any indication to the contrary, that the company was obeying the law, and that no engine was advancing toward the crossing within a distance of eighty rods."

In the case of *Indianapolis, etc., R. R. Co.* v. *McLin*, 82 Ind. 435, the court said: "He [the party injured] looked and listened, but could neither see nor hear an approaching train. No bell was ringing, no whistle sounding. Everything indicated the absence of danger. He had a right to know, for such is the law, that it is quite as much the duty of the appellant to give timely warning of the approach of its cars to the crossing, as it was his duty to listen for such warning. He listened, but there was no warning; he looked but no train or danger could be seen. This was all the law, under the circumstances, required. While it is true that the failure of the appellant to give warning did not relieve the appellee's son from exercising care to avoid injury, yet the absence of such warning is a circumstance to be taken into consideration in determining whether he did exercise the degree of care required or not."

In *Cleveland, etc., R. W. Co.* v. *Harrington*, 131 Ind. 426, it is said: "In the absence of some evidence to the contrary, we think the appellee had the right to

presume that the appellant would obey the city ordinance and would not run its trains at a greater rate of speed than four miles an hour at the point where the injury occurred, and while the wrongful conduct of the appellant in this regard would not excuse her from the exercise of reasonable care, yet in determining whether she did use such care her conduct is to be judged in the light of such presumption."

In *Pennsylvania Co.* v. *Stegemeir,* 118 Ind. 305, where the injured party entered upon the track through an open gate, the court said: "He had no right, however, to recklessly omit to use his senses of sight and hearing, and rely entirely upon this presumption; but he did have a right to presume that there were no approaching trains."

In *Chicago, etc., R. R. Co.* v. *Boggs,* 101 Ind. 522, 51 Am. Rep. 761, the doctrine is approved that if a railroad company creates an appearance of safety, and a traveler influenced by the appearance, enters upon the track and is injured, he may maintain an action for the injuries. In that case the court said: "We have seen that the traveler has a right to presume that the law will be obeyed, and acting upon this presumption he has a right to assume that the company will not move one train so close upon another as to render of no avail the provisions of the statute."

In *Baltimore, etc., R. W. Co.* v. *Conoyer,* 149 Ind. 524, the court, by Jordan, J., said: "Counsel seem to ignore the fact that the charge included, not only the sense of hearing, but that of sight as well, and, substantially and in effect, advised the jury that a person approaching a railroad crossing has the right to assume that the company will obey the law, by giving the required signals of an approaching train; and if such person, under the circumstances, after having exercised due care, and employed his senses of seeing

and hearing, to ascertain if a train is approaching, and thereby avoid danger, can neither see nor hear an advancing or moving train, he is justified in presuming that he can pass over the crossing in safety, This brought the instruction well within the rule asserted by the authorities: See *Pittsburg, etc., R. W. Co.* v. *Martin*, 82 Ind. 476; *Miller* v. *Terre Haute, etc., R. W. Co.*, 144 Ind. 323; Elliott on Railroads, section 1158."

Counsel for appellant ask a reversal of the case at bar upon the authority of the *Cincinnati, etc., R. W. Co.* v. *Howard*, 124 Ind. 280. The two instructions held erroneous in that case were the second and fifth. The court speaking of the second instruction said: "The second instruction could have led the jury to no other conclusion, if the view was in some way obstructed between that part of the highway over which the appellee was approaching the crossing and the railroad, and there had been a failure to sound the whistle attached to the locomotive engine or ring its bell within eighty rods of the crossing, and if she could have crossed in safety had the approaching train been eighty rods away, than that she was not guilty of contributory negligence, even though she drove upon the crossing without stopping to look or listen for an approaching train." In view of this criticism of that instruction, it was clearly unlike the instruction in the case at bar. As to the fifth instruction given in the Howard case, the court said: "By the fifth instruction the jury are told that if the whistle was not sounded nor the bell rung, this was a circumstance tending to show want of contributory negligence, and as a logical sequence (if it were a circumstance in that direction), the jury were told that they might find therefrom that it was sufficient to establish the fact, as it was for them to determine as

to the weight of the evidence." It would be a strained construction of the language used in the instruction in the case at bar to say that the above language is applicable. Taking all the instructions set out in the Howard case together, and it is evident from what is there said, that the court was expressly denying the theory advanced by counsel that a reliance upon the duty of the railroad company to give the statutory signals would excuse the injured party from the duty to look and listen for an approaching train before going upon the crossing. This is the view of that opinion expressed by the Supreme Court in the case of *Miller* v. *Terre Haute, etc., R. W. Co.*, 144 Ind. 323. The opinion in the Howard case criticises the case of *Pittsburg, etc., R. W. Co.* v. *Martin, supra,* and says that it is not in harmony with the earlier cases, and is out of line with the more recent cases, and cannot be regarded as authority. No criticism is made, however, of the case of *Indianapolis, etc., R. W. Co.* v. *McLin, supra,* which is a much stronger case than the Martin case. In the case of *Miller* v. *Terre Haute, etc., R. W. Co., supra,* Hackney, J., speaking for the court, expresses doubt as to the entire justice and propriety of the criticism of the Martin case in the Howard case, and says: "We do not understand the Martin case or the Harrington case [131 Ind. 426] to hold that one using a highway at the crossing of a railway may do so without any care for his own safety or the safety of those using the railway; or that he may repose a blind confidence in receiving the warning signals required to be given by locomotive engineers, and pursue his course without looking or listening for the approach of trains. We have no reason to doubt the soundness of the rule in the Harrington case, nor that of the Martin case, so far as it announced the right of the traveler to believe that the railway company

would obey the law." The doctrine laid down in the Martin case was expressly approved in the case of *Pittsburg, etc., R. W. Co.* v. *Burton,* 139 Ind. 357. And the rule declared in *Indianapolis, etc., R. R. Co.* v. *McLin, supra,* is followed in *Terre Haute, etc., R. R. Co.* v. *Brunker,* 128 Ind. 542. See *Chicago, etc., R. R. Co.* v. *Hedges,* 105 Ind. 398.

In view of the authorities, the question presented by the instruction is not free from difficulty. It is not the purpose to criticise or go contrary to the rulings of the Supreme Court upon the question, but to follow the rules declared by that court. And as that court in a later case, directly criticised the Howard case, and at the same time has approved the doctrine in the Martin case, and has also approved the doctrine of that case in other cases, and as the McLin case has never been overruled, but has been cited with approval, we can but conclude that the instruction given by the trial court is in harmony with and is sustained by the rule as now held by the Supreme Court.

It is settled beyond question in this State that a person who is approaching a railroad crossing, and does not look and listen for an approaching train, but heedlessly attempts to cross the tracks because he hears no signals, is guilty of contributory negligence. The law says the company must give these signals and it also says that the traveler must listen for them. Suppose he is in a place where he cannot see, but where the signals could be heard, and he stops and listens and hears no signals because none are given. His conduct, under such circumstances, must be that of a reasonably prudent man. If the signals were given and he could have heard them, it is held he did hear them, and this fact must be considered in determining the question of his conduct at the time he approached the crossing. The same reasoning,

equally as sound, concludes that if he listened for signals and heard none, because none were given, that fact should be considered in determining his conduct. "The omission," says the Supreme Court, "is calculated to mislead the traveler, and to assure him that the coming of the train is not imminent." *Chicago, etc., R. R. Co. v. Boggs*, 101 Ind. 526; Pierce on Railroads, 350.

It is argued that the court's instruction to the jury on the question of damages is erroneous, for the reason that it left it with the jury to assess damages for a permanent injury when there is no evidence in the record tending to show a permanent injury, and for the further reason that the instruction told the jury they might consider the peril to appellee's life at the time of the accident as an element of damages. There was no direct evidence that the injury is permanent, but there is evidence from which the jury could have concluded that appellee's injuries are of a permanent character. In cases of this kind it is often impossible to say whether the injury will be permanent. The jury were left to say whether the injury is temporary or permanent, and under the evidence they could have concluded either. It was not unreasonable to say, upon the evidence, that appellee's injury would be permanent. See *Ohio, etc., R. W. Co. v. Cosby*, 107 Ind. 32.

As to the second objection to this instruction appellant's counsel admit that "it is true that in *Terre Haute, etc., R. R. Co. v. Brunker*, 128 Ind. 542, a similar instruction seems to have been sustained."

In the case cited, the instruction was objected to because it stated that the jury should "take into account the peril, if any there was, to plaintiff's life." The instruction in that case, as in the case at bar, told the jury that they might assess such damage as would

fairly compensate the appellee for injuries. As we construe the instruction in question, it is, in effect, identical with that in the case of *Terre Haute, etc., R. R. Co. v. Brunker, supra.* Judgment affirmed.

Henley, C. J., and Wiley, J., dissent.