American Tin-Plate Co. v. Williams.

## AMERICAN TIN-PLATE COMPANY v. WILLIAMS.

[No. 3,835.   Filed November 19, 1902.]

NEGLIGENCE.—*General Verdict.*—*Special Findings*—Where in an action for damages for personal injuries the jury returned a general verdict for plaintiff, it was not necessary for the special findings to show that defendant was negligent or that the danger was not assumed by plaintiff.   *p. 53.*

MASTER AND SERVANT.— *General Verdict.*—*Special Findings.*— *Complaint.*—Where the complaint in an action for personal injuries to a servant caused by the overturning of a car loaded with steel bars which were being transferred from one department of defendant's factory to another alleged that the mechanism used for dumping was insufficient, and that defendant had permitted the same to become and remain out of repair, a finding that the appliances had not become out of repair will not overcome a general verdict for plaintiff, since the general verdict was left unaffected as to the original insufficiency of the appliances.   *p. 53.*

SAME.—*Fellow Servant.*—*Intervening Agency.*—A finding, in an action for injuries to a servant caused by a tram-car dumping to the wrong side, that the car would not have dumped that way but for the .act of a fellow servant in attempting to dump it on the proper side of the track, will not relieve defendant from liability if the real cause of it dumping the wrong way was the insufficiency of the appliances furnished by defendant.   *pp. 54–55.*

APPEAL AND ERROR.—*Evidence.*—The Appellate· Court can not consider causes for a new trial dependent upon the evidence, where the evidence is not in the record.   *p. 56.*

SAME.—*Special Bill of Exceptions.*—*Reserved Question of Law.*—A particular ruling upon evidence admitted is not presented for review by a special bill of exceptions where it does not appear from the bill that the evidence embraced therein was all the evidence in the cause upon the subject to which the question and answer therein set forth related, and it does not appear by the record

that the appellant notified the trial court that it intended to appeal on the question of law upon the bill of exceptions only, or that the bill was made up as provided by §642 Burns 1901, enabling a party to reserve a question of law. *p. 56.*

MASTER AND SERVANT.—*Personal Injuries.—Damages.—Instructions.— Peril.*—No error was committed in instructing the jury in an action by a servant for personal injuries that they might take into consideration "the peril, if any, to plaintiff's life at the time of the injury, and, upon all the facts proved, ascertain the amount of his injuries, and award such damages, if any plaintiff has sustained, as would fully and fairly compensate him for such injuries." *pp. 56–57.*

From Madison Superior Court; *H. C. Ryan,* Judge.

Action by David A. Williams against the American Tin-Plate Company for personal injuries sustained. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*J. C. Blacklidge, C. C. Shirley, Conrad Wolf, C. M. Greenlee, B. R. Call* and *F. Winter,* for appellant.

*M. A. Chipman, S. M. Keltner* and *E. E. Hendee,* for appellee.

BLACK, J.—The appellee recovered judgment against the appellant for personal injury suffered by him while in its employment in the capacity of weighmaster, the injury having been caused by the upturning or dumping upon him of a quantity of heated steel bars from a car in which they were transferred from one department to another of the appellant's tin-plate factory. The car was one of a number which ran upon an iron tramway, extending north and south, and the steel bars were carried in a V-shaped box or basket made of boiler iron. The car was supplied with apparatus by which the basket might be dumped, so as to unload the steel bars at the side of the track. This apparatus consisted of a ratchet-wheel, or cogwheel attached to a shaft which was connected to the top of the basket by means of chains on either side, and the shaft was provided with a wheel or crank whereby the shaft was to be operated in dumping. On either side of the ratchet-wheel, and

bolted to the adjacent framework, was a steel dog, which at one end turned loosely upon the bolt by which it was attached to the framework, the other end, or nose, being shaped and adjusted to fit between the teeth of the cogwheel, thereby to prevent the cogwheel and shaft from turning in the direction of the dog. On the night of December 15, 1897, the appellee, while on duty, was passing near the west side of the tramway, and opposite the loaded car, which another employe was attempting to dump toward the east side of the tramway. The car dumped toward the west, so as to throw the load upon the appellee. It was alleged in the complaint "that the ratchet-wheel of said car was too small, slight, and insufficient therefor, and was not strong enough to control said car, and the defendant had allowed and permitted the said ratchet-wheel, car, and appliances thereto to become and remain out of repair for a long time; and the defendant, by the exercise of ordinary care could have known and did know that said ratchet-wheel, car and appliances thereto were too small, slight, and weak, and insufficient and defective and out of repair, so that the defendant's employe in charge thereof could not control the same," etc. No question is made here upon the pleadings. With the general verdict in favor of the appellee, the jury returned special findings in answer to interrogatories proposed by the appellant; and it is contended on behalf of the appellant that the court erred in overruling its motion for judgment in its favor on the interrogatories, and the answers of the jury thereto, notwithstanding the general verdict.

As shown by the answers to interrogatories the appellee, when injured, had been in the employ of the appellant for about three months, and had been engaged in the particular service in which he was when injured, about four shifts. This service required him to be frequently about the dumpcar which caused his injury. This car had been in use about one month prior to the appellee's injury. The acci-

dent occurred in the night-time. There were two electric arc lamps such as are usually employed for street lighting, burning on the west side of the hot-mills, when he was injured, and the accident occurred near the west side of the hot-mills, about midway between the electric lights which were 120 to 150 feet apart. The dump-cars, including the one which caused the injury, were loaded at what is known as the bar-mill, and thence were propelled by horse-power over a tramway on the west side of the hot-mills. The car was loaded automatically, and was hauled in the usual way to the hot-mills. Appellant's employes engaged in the bar-mills and the hot-mills were working under the superintendence of the same superintendent, in charge of the factory, all engaged in preparing steel plates for the tinning process afterwards applied in the factory, the process in the hot-mills immediately following that in the bar-mill, the treatment in both these places being part of the process of manufacturing tin-plate at appellant's factory. The load of steel bars by which appellee was injured was unevenly and unequally placed in the car, and was so adjusted as to throw the weight thereof largely on one side of the car, but not so as to render the car top-heavy and unstable. The bulk of the weight was on the west side of the car as it stood on the track immediately before it was overturned, and the manner in which it was loaded rendered it more difficult to dump on the east side of the track than it would have been if the load had been evenly adjusted. One George Wilkins was engaged in dumping the car when the injury occurred, he being an employe of the appellant engaged in the ordinary duties of his service in which he had been employed about thirty days, and he and the appellee having been engaged upon the same shift about four shifts, or turns, their duties bringing them in frequent contact. The car in question was supplied with a wheel or crank by means of which it was ordinarily dumped, but Wilkins did

not dump it by means thereof at the time of the injury. He was unable to dump the car to the east, at the time of the injury, by means of the wheel or crank, not because the car was overloaded on the west side, thereby causing a tendency to dump to the west, but by improper construction of the ratchet-wheel and dogs. He attempted to dump the car by means of an iron bar applied to the wheel as a pry, or lever, in applying which he inserted the point thereof under an iron shaft running longitudinally and forming part of the car. By means of the lever so applied he turned the dump toward the east a part of the distance necessary to cause the load to be discharged to the east, when the point of the lever slipped from the shaft so as to permit the dump to swing back toward the west, in doing which it was caused to turn over and discharge the load on the west side of the track. The car would not have so dumped the load if the lever had not so slipped. In answer to the question, "If said car had been properly loaded, could said Wilkins have dumped the same to the east?" the jury answered, "Yes, if the appliances had been of proper mechanism." He could have dumped the car to the east, as it was loaded, if the appliance had been sufficient.

The car at the time of the injury was standing immediately west of the entrance to the mill No. 12, to which position it had been drawn from the north, toward the south, by a horse hitched to it, the horse being south of the car and headed toward the south; but, before the car was dumped, the horse had been unhitched and taken to the north side of the car. One of the appellee's duties was to instruct the persons operating the car at which particular mill they should dump their loads, and he had instructed the person operating this car to dump this load at mill No. 12, and he was dumping the load at that mill pursuant to such direction. The appellee was going from the south toward the north, and had approached to within ten or twelve feet of the car, when he first observed it, and he

knew that it was to be dumped where it was standing when he first observed it. He had means of knowing which way the persons operating the car intended to dump it, the means being by custom and instructions to dump nearest the hot-mills. When he approached the car he did not see the person who was dumping it. Being asked if the appellee stopped, before he undertook to pass the car, to ascertain what was being done in relation thereto, the jury answered that he halted for an instant. The appellee and Wilkins were both engaged in the service of the appellant under the superintendence of its foreman John O'Brien at the time of the injury. The appellee, before he was injured, did not make his presence on the west side of the track known to Wilkins, who, just before the car was dumped, for the purpose of warning other employes that he was about to dump the car, cried, "Look out!" That was the signal usually given in such cases. Immediately before the appellee was injured, the employes of the appellant were engaged in carrying bars from the pile on the east side of the car to the hot-mills. The mechanism which controlled the dumping of the car was not concealed, and there was nothing to conceal it from the ordinary observation of those who worked about the car. There was no evidence that the appellee prior to his injury ever observed the condition of the mechanism or device by which the car was dumped. The mechanism and construction of the dogs and the ratchet-wheel were insufficient.

The dump of the car was operated by means of a wheel or crank working by means of a chain attached to an iron or steel shaft under the dump. Surrounding and fixed to this shaft there was a steel cogwheel or ratchet-wheel, so attached for the purpose of controlling the dump by means of a steel piece, called a dog, on each side of the ratchet-wheel. These dogs were bolted to the iron framework of the car so as to permit the opposite end of each to fit into the grooves or meshes of the cogwheel as it was turned in

the opposite direction from the dog, which turned loosely upon the bolt by which it was attached to the framework at the end of the dog farthest from the cogwheel; each of the dogs being about three inches long, and long enough to reach from the place where it was attached to the framework to the cogwheel or ratchet-wheel, so as to permit the loose end of the dog to fit between the projections or teeth on the surface of the circumference of the wheel, and into the grooves between the teeth. Q. 76. "When either of said dogs was fitted at the loose end into the grooves of said ratchet, could said car dump in the direction opposite the dog so fitted, without breaking some part of the mechanism by which the car was dumped?" A. "Yes, it did dump." Q. 77. "Was there any device by which said dogs were fitted to and released from said ratchet-wheel at the time it was desired to dump said car, or prevent the same from being dumped, other than by the hand of the man whose duty it was to operate the dump?" A. "No." There was no evidence that any part of the mechanism broke at or before the time when the car was dumped when the appellee was injured. Q. 81. "If any part of said mechanism was out of repair when the injury was received, how long had the same been out of repair?" A. "From time of putting cars in use." Q. 82. "Were the dogs properly in position, with reference to said ratchet-wheel, when defendant's employe attempted to dump said car?" A. "No evidence." The car, with the appliances with which it was equipped, could have dumped to the west, when the appellee was injured, if the dogs with which it was supplied had been properly adjusted for dumping to the east. The space on the west side of the car was free from bars at that time. The bars with which the car was loaded were very hot. The jury found that "the first acting cause that caused the loaded car" to start in its westward motion was "by the dumper attempting to dump said car to the east."

It is claimed that the special findings show contributory negligence on the part of the appellee. It must be said, we think, that there were no facts specially found which removed the decision of the question of contributory negligence from the province of the jury, and in the general verdict the matter was determined in favor of the appellee.

It is further claimed that the special findings fail to show that the appellant was negligent, or that the danger was not assumed by the appellee. It was not necessary to the appellee's cause that the special findings should show either of these matters. The jury found upon these questions in their general verdict. It is not questioned that Wilkins and the appellee were fellow servants. The general verdict established, either that the ratchet-wheel was too small, slight, and insufficient and not strong enough to control the car, or that appellant had allowed and permitted the ratchet-wheel, car, and appliances thereto to become and remain out of repair, or, that all these things, as charged in the complaint, existed, and that the injury was suffered by reason of such fault or faults of the appellant, and not by reason of negligence of a fellow servant. We think that the special findings do not necessarily establish anything to the contrary, unless it may be said that they show that the appliances had not become out of repair, in comparison with their original condition, thus leaving the general verdict unaffected as to their original insufficiency. In considering the special findings they must be reviewed in connection with any additional facts which might have been shown in evidence on the trial of the issue. The fact that the car would not have dumped to the west side of the tramway but for the act of Wilkins in attempting to dump it toward the east side of the track does not relieve the appellant from liability, if the real cause of the dumping toward the west was the insufficiency of an appliance supplied by the appellant for the purpose, in such an exigency, of holding all that had been gained in the

movement toward the east, and of preventing any upturning toward the west. The act of Wilkins in seeking to cause the car to tip toward the east was a use of the appliances for which they were provided and intended. The method adopted by him, under the circumstances shown by the findings, can not be said by the court, as a matter of law, to have been a negligent act on his part. The appellant's case was not dependent upon the insufficiency, in this instance, of the wheel or crank for turning the shaft, and the consequent use of an iron bar as a lever, but proceeded upon the theory that when the necessary means for dumping the car to the east were employed, the ratchet-wheel and dog, through insufficiency thereof for the purpose for which they were provided, did not prevent the car from swinging toward the west, as, if sufficient for the intended use thereof, they would have done. Such an appliance, to be sufficient for such a use, ought to have held the car while a second purchase was taken with the lever, if in the first attempt the employe's endeavors to dump the car failed to give it sufficient impetus toward the east.

Stress is laid in argument upon interrogatories seventy-seven and eighty-two and the answers thereto, above quoted. It seems to be supposed that the negative answer to question seventy-seven amounted to a finding that it was a part of the duty of the employe who dumped the car to fit by his hand the dog on the east side of the ratchet-wheel; but the interrogatory, if intended to draw such a finding from the jury, did, in truth, call forth no more than a finding that there was no additional mechanical appliance or "device" for fitting the dog between the cogs of the ratchet-wheel; and the answer was not antagonistic to the theory that the appliance, under the circumstances, should have worked of itself, without such an additional device, the existence or the need of which was not asserted by either party. It was not found to be the duty of the appellee or Wilkins, or of any other employe, to adjust or move or fix

the dog on the east side of the ratchet-wheel, the function of which was to keep the car from upturning toward the west; and unless such duty devolved on such employes, it was not necessary to show that they, or either of them, had seen to the matter before the attempt was made by Wilkins to dump the car to the east. The answer of the jury to interrogatory eighty-two may be regarded as showing merely that there was no evidence, relating to the time when Wilkins attempted to dump the car, as to the position of the dogs with reference to the ratchet-wheel, and showing that their position was proper at that time. Yet the findings indicated that before that time and up to that time the car, loaded most heavily on the west side, was prevented from tilting or upturning in that direction by the cogwheel and the dog on the east side thereof, until by the sudden impetus of the heavy car toward the west, caused by such uneven loading and the slipping of the lever, the appliance failed to perform the office for which it was designed, because of its original insufficiency for such an exigency occurring without any negligence so far as indicated by the special findings.

We find it necessary to sustain the claim of counsel for appellee that the official stenographer's report of the evidence is not properly brought into the record. When the motion for a new trial was overruled, and the judgment was rendered on the verdict, the court ordered the official reporter to file with the clerk within sixty days the longhand manuscript of the shorthand notes of the evidence, etc. On a day in the next term of the court the reporter filed what purported to be the reporter's original longhand manuscript of the evidence, etc., and thereupon at the same date the judge affixed thereto his certificate. It does not appear that time extending beyond the term was given for any bill of exceptions, or that any bill of exceptions was ever filed. It was sought to conform to the method provided by §6 of the statute of 1899, relating to the making

the evidence part of the record, which method has been held inadequate, and the valid requirements concerning an original bill containing the evidence were not complied with. The evidence not being in the record, it follows that we can not discuss causes for a new trial dependent thereon, as that the verdict is not sustained by sufficient evidence, that the court erred in refusing to give an instruction asked by the appellant, and that it erred in the admission of certain evidence.

There is in the record a special bill of exceptions, filed within the term of the trial, showing the overruling of the appellant's objection to a certain question to a witness whose deposition was introduced, and the overruling of appellant's motion to strike out the answer of the witness to that question, and exceptions to both these rulings. It does not appear from this bill that the evidence embraced therein was all the evidence in the cause upon the subject to which the question and answer therein set forth related; and it does not appear in the record that the appellant notified the trial court that it intended to take the question of law to an appellate court upon the bill of exceptions only, or that the bill was made up as provided by the statute enabling a party to reserve a question of law for the decision of a court on appeal; being §642 Burns 1901. A particular ruling upon evidence admitted may not be saved for review by thus bringing up to this court a fragment of the evidence consisting of one question propounded to a witness and his answer thereto. *Smith* v. *James,* 131 Ind. 131, 134; *Conner* v. *Town of Marion,* 112 Ind. 517; *Acme Cycle Co.* v. *Clarke,* 157 Ind. 271.

In an instruction given by the court relating to the assessment of the appellee's damages, the jury were told amongst other things that they might take into consideration "the peril, if any, to the plaintiff's life at the time of the injury, and upon all the facts proved ascertain the amount of his injuries, and award such damages, if any, plaintiff has sus-

tained, as would fully and fairly compensate him for such injuries." The appellant objects to this instruction because it included as an element of damages the peril, if any, to the appellee's life at the time of the injury. A similar instruction was apporved in *Terre Haute, etc., R. Co.* v. *Brunker,* 128 Ind. 542, and that decision was followed by this court in *Louisville, etc., R. Co.* v. *Williams,* 20 Ind. App. 576, 588.

The appellant, by a bill of exceptions filed within the term at which the cause was tried, saved its exception to the action of the court in overruling the appellant's motion to require the jury to make more definite and certain their answers to certain of the interrogatories submitted at appellant's request. One interrogatory and the answer thereto to which the motion related were as follows: "If any part of said mechanism was out of repair or wanting at the time of the accident in question, state fully what part and how it was defective. A. Construction of ratchet-wheel and dogs were insufficient." This interrogatory called for a statement of defectiveness in the event only that some part of the mechanism was found by the jury to be out of repair or wanting. But the jury seem to have been constantly averse to finding that any part was out of repair, in the sense that it was in a deteriorated condition, or was wanting, in the sense that some portion of the mechanism as originally made was lacking. Instead, however, of answering directly that such facts, contingently stated, on which the question was based did not exist, they did so inferentially, by saying that the defectiveness of the mechanism consisted in the ratchet-wheel and dogs being insufficient in their construction. Unless, in answer to another interrogatory, they had found, or were willing in answer to this one to find, that some part of the mechanism was out of repair or wanting, they could not be required to state in what respect it was defective in such regard. Like argument will apply to another of these interrogatories and an-

swers, as follows: "If the mechanism of said car was out of repair at the time plaintiff was injured, state fully in what particulars. A. The mechanism and construction of dogs and ratchet-wheel of said car were insufficient." If the appellant desired the jury specially to state in what respect or from what particular cause the mechanism was insufficient in construction, an interrogatory might have been so framed as to elicit a more particular finding on this subject.

Two other interrogatories and the answers thereto embraced in the motion under consideration were as follows: 84. "If said dogs had been in position, would said car have dumped to the west when plaintiff was injured? A. It did so dump." 88. "Could said car have dumped to the west, when plaintiff was injured, if the dogs with which said car was supplied had been in position at the time, with the end of the east dog inserted in the grooves of said cog or ratchet-wheel? A. It did so dump." It was not made to appear that it was the duty of any employe to fix the dog on the east side of the cogwheel in any particular position or in any manner to regulate it; and the jury found that the cause of the upturning of the basket toward the west was an original insufficiency in the ratchet-wheel and dogs as constructed. Interrogatory seventy-six and the jury's answer thereto were as follows: "When either of said dogs was fitted at the loose end into the grooves of said ratchet, could said car dump in the direction opposite the dog so fitted, without breaking some part of the mechanism by which said car was dumped? A. Yes, it did dump." In answer to another interrogatory the jury stated that there was no evidence that any part of the mechanism broke. Interrogatory eighty-nine and its answer were as follows: "Could said car have dumped to the west when the plaintiff was injured, if the dogs, with which the same was supplied, had been properly adjusted for dumping to the east? A. Yes; with the appli-

ances with which said car was equipped." We can not determine that the appellant was injuriously affected by the action of the court in refusing to require the jury to make other answers to interrogatories eighty-four and eighty-eight.

Judgment affirmed.