# United Coal Mining Company *v.* Daugherty.

[No. 7,329. Filed November 21, 1911. Rehearing denied February 2, 1912. Transfer denied July 5, 1912.]

1.  Appeal.—*Review.—Conflicting Evidence.—Verdict.—*The court will not weigh conflicting evidence on appeal, and the jury's verdict is conclusive if there is some evidence to support it. p. 169.

2.  Master and Servant.—*Injury to Servant.—Assumption of Risk.* —Where plaintiff, who was employed in a coal mine to remove pillars, saw that a rock in the roof was loose, and asked the day man, whose duty it was to make such repairs, to take it down, and the day man propped the rock instead and informed him that it was all right, plaintiff had a right to rely on the repairs being such as to make the place reasonably safe, and it cannot be said

as a matter of law that plaintiff assumed the risk of injury from the falling of the rock by going to work thereunder after making only an ordinary inspection of the place, although he was in a position where he could have tested the rock and discovered that it was loose. p. 169.

3. MASTER AND SERVANT.—*Injury to Servant.*—*Assumption of Risk.* —*Evidence.*—*Verdict.*—*Conclusiveness.*—Where the evidence is such that the court cannot say as a matter of law that plaintiff assumed the risk of injury from the dangerous condition of his working place, his nonassumption thereof is established by the verdict in his favor. p. 171.

4. MASTER AND SERVANT.—*Injury to Servant.*—*Evidence.*—*Admissibility.*—Where plaintiff, employed in a coal mine to remove pillars, informed the day man, whose duty it was to make repairs, that a rock in the roof was loose and that the place was dangerous, and the day man, within two to five minutes after propping the rock with timbers, informed plaintiff that it was all right, such statement formed a part of the history of the incident, and was admissible on that ground. p. 171.

5. MASTER AND SERVANT.—*Injury to Servant.*—*Evidence.*—*Admissibility.*—Where plaintiff, a coal mine employe, had informed the day man, whose duty it was to make repairs, that the roof was dangerous, and the latter, after making repairs thereto, told plaintiff that it was all right, such statement was admissible for the purpose of showing that the repairs had been finished. p. 172.

6. APPEAL.—*Assignment of Errors.*—*Waiver.*—Errors assigned, but not discussed, are waived. p. 172.

7. APPEAL.— *Objection to Instructions.*— *Waiver.*— *Briefs.*— One complaining of error in the giving of instructions waives consideration thereof, where neither the instructions nor a substantial statement of what they contain is set out in his brief. p. 172.

8. MASTER AND SERVANT.—*Injury to Servant.*—*Instructions.*—In an action by an injured coal mine employe, instructions that it was not necessary for plaintiff to establish all the various acts of negligence charged, but that it was sufficient if he had proved by a preponderance of the evidence that he was injured as alleged, without contributory negligence, and that the injuries were proximately caused by one or more of the material acts of negligence charged, and that while defendant was not an insurer of the safety of its employes against injury, it was its duty to provide a reasonably safe place of work for them, do not purport to state all the facts essential to a recovery by plaintiff and they were not erroneous. p. 173.

9. TRIAL.—*Instructions.*—An instruction, which purports to tell the jury on what state of facts a party may recover, must include all the material facts necessary to a recovery. p. 173.

10. MASTER AND SERVANT.—*Injury to Servant.—Measure of Damages.—Peril.—Instructions.*—In a servant's action against the master for personal injuries, an instruction that the peril, if any, to plaintiff's life, may be considered as an element of damage, is not erroneous, where there is evidence that actual physical injuries were sustained. p. 174.

From Parke Circuit Court; *Gould G. Rheuby,* Judge.

Action by John P. Daugherty against the United Coal Mining Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*White & White,* and *Jump, Cooper & Bogart,* for appellant.

*Maxwell & McFadden,* for appellee.

IBACH, J.—Common-law action by appellee to recover damages for personal injuries sustained while employed in appellant's mine, and alleged to have been caused by appellant's negligence in failing properly to support and prop a certain loose rock in the roof of the mine above appellee's working place. Trial by jury resulted in judgment for appellee. The errors assigned and discussed arise on the motion for a new trial.

It is properly assigned as error that the verdict of the jury is not supported by the evidence. All the testimony in the case was given by appellee's witnesses, who were himself, his father, who was employed in the same mine, his wife, his physician, and William Dutell, who was working with him at the time of his injury. It appears from the evidence that appellee, a coal miner of about ten years' experience, had been for a year employed by appellant to "pull pillars", that is, before the final abandonment of the mine to remove the pillars of coal left to support the roof along entries and between them and other workings, and for two weeks he had been working at such labor with Dutell. Appellee was absent from the mine on the day before his injury, and on that day Dutell shot down from a certain pillar onto the floor of the mine a pile of coal four feet deep

at the deepest point, and diminishing in thickness to six inches, which he left in that condition over night. On the day of the injury, when appellee and Dutell came to work in the morning, they found that a loose rock in the roof of the mine extended across the car track, which passed near the pillar and beyond it four or five feet immediately over the pile of coal which Dutell had shot down the day before. Appellee asked the day man to take down the rock. Instead of doing so, he placed some timbers under it, three on one side of the track, and two on the other. After the props were set four or five feet of the rock projected beyond the timbers and overhung the pile of coal. Just as the day man had finished setting the props, he said to appellee and Dutell: "Boys, I think that is all right." After working at another place near by until 2 p. m., appellee and Dutell went to work shoveling the coal that was under the loose rock into cars, which was a part of the work they were employed to do. When they had worked about an hour, the rock broke off near the timbers, and without warning fell upon appellee, breaking his leg and otherwise injuring him. The coal vein was about four or five feet in thickness, and appellee, who was a man five feet nine inches in height, could not stand erect, and was stooped over shoveling when the rock fell. The piece which fell was about five or six feet long, and four or five feet in width, six inches in thickness next to the timbers, at the place where it broke, and tapering to a feather edge. Appellee's father, an experienced miner, testified that to have propped the rock properly, two more props should have been placed under the projecting end, and that these could have been placed there with the pile of coal underneath. But appellee and Dutell both testified that no more props could have been placed there without removing coal from underneath. Dutell testified that one could see that the rock was loose, that the end of it swagged down from the roof a little, but it seemed to be thin, and there were plenty of timbers, such as are used for propping, lying

near. Appellee testified that he made no examination of the rock before going to work under it, beyond looking at it, saying that "you can't examine a rock just with your eyes". He also stated that he had a light, and that with the light he could have seen the condition of the roof.

As there is conflicting testimony on the subject of appellant's negligence in its manner of propping the rock, into that question we cannot enter, and since there is some evidence tending to show that appellant was negligent, so far as the present appeal is concerned we must regard that fact as conclusively found against appellant by the verdict of the jury.

But appellant contends that the following uncontradicted facts brought out by the evidence show that appellee assumed the risk. He knew that the rock had been loose, for he told the day man to take it down and clean it. He knew that the day man had not done so, but, instead, had propped it with timbers. When he went to work under the rock, he made no examination beyond casually looking at it, although by looking he could have seen that the rock was loose, and although, from the situation in which he worked, the rock being not more than five feet from the floor, it would have been easy to have tested it otherwise than merely with his eyes. So appellant claims the evidence brings out such a state of facts that appellee must have known of the danger if he had exercised ordinary care and prudence.

The present case comes within the rule that "a servant has the right to rely on assurances that defects which he has complained of have been remedied, and is entitled to recover for injuries caused by the failure to repair as alleged unless the defects are such as to be apparent to one in the use of ordinary care." 20 Am. and Eng. Ency. Law 130.

In 4 Thompson, Negligence §4665, the author, while discussing assumption of risk, states the rule thus: "If the servant complains to the master, or to the superintendent or

other representative of the master, that a given place, machine or appliance is defective and dangerous, and the latter undertakes to repair the defect so as to make it safe, and assures the servant that he has done so, it is not negligence, as matter of law, for the servant to continue to work as before, though it afterwards turns out that the repairs were such as to not make it safe.'' This principle has been held in the following cases: *Kerrigan* v. *Chicago, etc., R. Co.* (1902), 86 Minn. 407, 90 N. W. 976; *Rogers* v. *Chicago, etc., R. Co.* (1896), 65 Minn. 308, 67 N. W. 1003; *Nelson* v. *St. Paul Plow Works* (1894), 57 Minn. 43, 58 N. W. 868; *Gulf, etc., R. Co.* v. *Brentford* (1891), 79 Tex. 619, 15 S. W. 561, 23 Am. St. 377; *Atchison, etc., R. Co.* v. *McKee* (1887), 37 Kan. 592, 15 Pac. 484; *Connolly* v. *St. Joseph, etc., Print. Co.* (1902), 166 Mo. 447, 66 S. W. 268; *Indiana Iron Co.* v. *Cray* (1898), 19 Ind. App. 565, 48 N. E. 803.

Applying this rule to the present case, it appears that when the day man had finished his repairs and notified appellee of such fact, he had a right to rely on the place being reasonably safe, and did not assume the risk occasioned by the defective repairs, unless the danger from such was apparent to one in the exercise of ordinary care. In other words, the fact that he had known that the place was dangerous before the repairs were made did not cast on him any duty to make a more thorough investigation of his place of work than if he had just entered the mine to work, with no knowledge of the previous dangerous condition. Neither did the fact that the master had repaired the place assure appellee that it was absolutely safe, but only that it was reasonably safe, nor did it in any way lessen appellee's assumption of obvious dangers. Appellee was under no duty to make a critical inspection. He had been told that the repairs were finished by the one whose duty it was properly to make such repairs. He made an ordinary inspection of the place, and he could see that the rock was propped; and though he could see that a part of it had separated somewhat from the roof,

at that point it appeared to be of little thickness. Such appearance would not necessarily indicate danger, and the evidence brings out nothing to show that the appearance of the rock indicated that there would be danger to one working under it. Appellee had a right to rely on the repairs being such as to make the place reasonably safe. While the evidence bearing on the issue of assumption of risk is uncontradicted, and does not strongly show nonassumption, yet it is such that we cannot say, as a matter of law, that it shows that the dangerous condition of appellee's working place, after the repairs had been made, was such as to be apparent to one in the exercise of ordinary care, or that it shows that appellee did not use ordinary care. It must therefore be held to be established by the verdict of the jury as an issue of fact that appellee, in the use of ordinary care, could not have been aware of the danger, and did not assume the risk.

During the trial, evidence was introduced by plaintiff to the effect that Joseph Robinson, the day or timber man, an employe and representative of defendant, was requested by plaintiff to take down a certain loose rock in the roof of defendant's mine, at the place where plaintiff would have to work. Robinson did not take it down, but propped the rock with timbers. A portion of the rock afterwards broke off and caused the injury for which plaintiff sues. Plaintiff when on the stand as his own witness was asked: "What, if anything, did Mr. Robinson say to you with reference to the timbers or the roof of the entry before he left?" The answer was: "Well, he says, I think, 'That is all right now.'" Defendant objected to the question on the ground that it did not call for the time of the conversation, whether before he put the timbers in or afterwards, it being too indefinite. The court overruled the objection, and defendant excepted. On cross-examination plaintiff testified that Robinson said it was all right, just when he got done setting up the timbers, between two and five minutes after

he had finished setting them up.  Defendant moved to strike out the remark of Robinson, as it appeared on cross-examination that it was made after he had put the timbers in.  The court overruled the motion, and admitted the remark on the ground alone that it showed that Robinson had finished his attempt to prop the roof.

Appellant argues that this evidence was incompetent, on the ground that declarations of an agent made while not engaged in transacting the business of the principal are not admissible against the principal.  But it seems that the master had delegated to the day man, Robinson, the duty of supporting the roofs and timbering the mine to make it a safe place in which to work.  This duty was a continuing one, and in all his work about the mine he represented the master. He was no less engaged in his master's business because he had finished making repairs in a particular place.  It also appears that the statement made by him to appellee was made so soon after the transaction as to form a part of its history, and to be admissible on that ground.  However, the court admitted the remark, not for the assurance of safety which it contained, but merely for the purpose of showing that the repairs had been finished.  For such purpose it was clearly competent.  And having notified appellant that his place of work was unsafe, and having been informed by appellant that the work of repair was finished, appellee had a right to assume that the place was reasonably safe.  An assurance that the place was all right would in this case have no more legal effect than a mere statement that the repairs were finished.

Certain errors assigned have been waived by failure to discuss them; and under the rules of the Supreme and Appellate Courts appellant has waived consideration of the errors assigned in the giving of instructions twenty, twenty-two and twenty-five at appellee's request, by failing to set them out sufficiently in his brief.  It is better, though not necessary, to set out instruc-

tions in full, and at least a substantial statement of what they contain must be made. It is not sufficient to set out what counsel regard as their legal effect. "In testing instructions the legal effect is to be determined by the court from the language used, and not by the opinion of counsel." *Henderson* v. *Henderson* (1906), 165 Ind. 666, 75 N. E. 269. In the present case, appellant's brief is especially faulty, for it purports to set out the contents of instructions twenty, twenty-two and twenty-five in such a way that from reading the brief we might conclude that they were erroneous. To satisfy ourselves on this point, we turned to the record, and found that the instructions as there set out in full state the law correctly, and though appellant is not entitled thereto, we give him the benefit of the result of our investigation.

Instructions five, fourteen, nineteen and twenty-three, given at appellee's request, were set out in full in appellant's brief, and properly presented for consideration. We set out below instructions five and fourteen, as the error alleged in the giving of the others is the same which is said to appear in these.

(5.) "It is not necessary that the plaintiff establish by a preponderance of the evidence all the various acts of negligence charged against the defendant in either paragraph of his complaint. It is sufficient if the plaintiff has proven by a preponderance of the evidence that he was injured as alleged, without negligence on his part contributing thereto, and that his injuries were proximately caused by any one or more of the substantial and material acts of negligence charged in either paragraph of his complaint against the defendant. If the plaintiff has so established his case then he is entitled to recover, notwithstanding he may not have proven all the acts of negligence charged against the defendant in either paragraph of his complaint."

(14.) "While the defendant was not the insurer of the safety of its employes against accident or injury, it was its

duty to provide a reasonably safe place for its employees in which to perform the work for which they were engaged, and if it failed so to do, and by reason thereof an employee who was without fault himself, was proximately injured thereby, then under such circumstances the defendant is liable to such employee for damages as occasioned him by such injuries.''

Appellant claims that the court in giving these instructions and instructions nineteen and twenty-three ignored the element of assumed risk, and that they come under the rule that an instruction which purports to instruct the jury on what state of facts a party may recover must include all the material facts necessary to a recovery. This principle is well established, but does not apply to the instructions under consideration. None of them purports to state to the jury what facts plaintiff must establish in order to recover, but each is intended to instruct the jury on one branch of the case. The fifth applies only to the issue of negligence, the fourteenth, nineteenth and twenty-third to the duty of the master to maintain a reasonably safe working place, and they correctly state the law on those propositions. None of them assumes to fix the basis on which appellee is entitled to recover, but only one element of that basis. Each of these instructions is a correct abstract statement of a general proposition of law applicable to any similar case between master and servant, and not an instruction based on the particular facts of the case at bar, such as those which were disapproved by the court in the authorities cited by appellant. The jury was fully and completely instructed by other instructions given as to assumption of risk, and the trial court did not err in giving instructions five, fourteen, nineteen and twenty-three, at appellee's request.

By instruction twenty-six, relating to the measure of damages, the court told the jury, enumerating various 10. elements of damages, that it might take into consideration the peril, if any there was, to the plaintiff's

life. Such an instruction was approved in *Terre Haute, etc., R. Co.* v. *Brunker* (1891), 128 Ind. 542, 551, 26 N. E. 178, *Louisville, etc., R. Co.* v. *Williams* (1898), 20 Ind. App. 576, 588, 51 N. E. 128, and *American Tin-Plate Co.* v. *Williams* (1902), 30 Ind. App. 46, 56, 65 N. E. 304, and on their authority and reasoning we hold the present instruction good. The authorities cited by appellant to the contrary go only so far as to hold that there may be no recovery for peril to life, irrespective of actual physical injuries sustained. Under the evidence in the present case, there was no question but that physical injuries were sustained.

No reversible error appearing, the judgment is affirmed.

NOTE.—Reported in 96 N. E. 477. See, also, under (1) 3 Cyc. 349; (2) 26 Cyc. 1213, 1478; (3) 26 Cyc. 1516; (4) 26 Cyc. 1422; (6) 3 Cyc. 388; (7) 2 Cyc. 1014; (8) 26 Cyc. 1491; (9) 38 Cyc. 1598; (10) 13 Cyc. 234. As to mining and the risks to servant thereto incident, see 87 Am. St. 573. As to the liability of a mine owner to a servant for injuries caused by the falling of the roof of the mine, see Ann. Cas. 1912 B 577.